REAVLEY, Circuit Judge:
 

 This is a bankruptcy case in which the trustee in bankruptcy, plaintiff-appellant
 
 *688
 
 herein, filed a complaint to sell free and clear of liens certain personal property in the estate of the debtor, including law books which are the subject of the claimed perfected security interest of defendant-ap-pellee, West Publishing Company. The bankruptcy judge denied the trustee’s complaint, and the district court affirmed. We reverse on the ground that West’s security interest was not perfected under the Texas statute, which tracks the Uniform Commercial Code.
 

 I.
 

 The debtor, Legal Cooperatives, Inc. (“LCI”), was engaged in business in Houston, Texas. It provided office space for lease to attorneys and furnished certain services to them on a commercial basis, including the use of a law library owned by LCI.
 

 On August 23, 1978, Michael J. Walter, Secretary-Treasurer of LCI, met with the sales representative for the West Publishing Company regarding the possible sale of books to LCI. At the meeting, Walter signed a purchase order for law books totaling $20,875.05 in value. The purchase order constituted an installment sales contract, which provided for a down payment and a specified monthly payment for the balance. Walter, a practicing attorney, did not sign the purchase order in the space provided for the purchaser’s signature; instead, he signed the space provided for a “personal guaranty” of the contract.
 

 In a short paragraph, located just beneath the statement of credit terms and printed in the same-sized type as the other portions of the instrument, the purchase order contains a statement that “[tjhis contract is subject to approval by vendor,
 
 who retains title to said books until paid
 
 and is not transferable by vendee.” (Emphasis added.)
 

 Thereafter, West filed a financing statement on a UCC-1 Form with the Secretary of State of the State of Texas. The financing statement contained the name and address of LCI as the debtor and West as the secured party. It was signed by West, but not by the debtor, LCI. Also, it did not describe the collateral; instead, it contained the following notation: “LAW BOOKS SEE ATTACHED SECURITY AGREEMENT.” A photostatic reproduction of the purchase order was attached to the financing statement.
 

 The trustee in bankruptcy brought suit under the “strong-arm clause,” 11 U.S.C. § 544(a)(1), seeking to avoid LCI’s obligation to West on the ground that the purchase order did not qualify as a security agreement under the UCC since it failed to contain language granting the vendor a security interest in the goods, or alternatively, on the ground that the financing statement did not meet the requirements of § 9-402 of the UCC, Tex.Bus. & Comm. Code Ann. § 9.402 (Vernon Supp. 1980-1981), since it was not signed by the debtor and did not contain an adequate description of the collateral.
 

 II.
 

 The bankruptcy judge concluded in his memorandum opinion that the purchase order signed by Walter was a security agreement.
 
 [1]
 
 We agree.
 

 
 *689
 
 Tex.Bus.
 
 &
 
 Comm.Code Ann. § 9.105(a) (12) (Vernon Supp. 1980-1981) defines a “security agreement” as “an agreement which creates or provides for a security interest.” A “security interest” is defined as “an interest in personal property . . . which secures payment or performance of an obligation.
 
 The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer
 
 ...
 
 is limited in effect to reservation of a ‘security interest.’
 
 ” Tex.Bus. & Comm. Code Ann. § 1.201(37) (Vernon Supp. 1980-1981) (emphasis added). Although “there must be language in the instrument which ‘leads to the logical conclusion that it was the intention of the parties that a security interest be created,’ ”
 
 Mitchell v. Shepherd Mall State Bank,
 
 458 F.2d 700, 703 (10th Cir. 1972), we conclude the language in the purchase order to the effect that West “retains title to said books until paid ...” was sufficient to reserve a security interest in the books to West.
 

 III.
 

 We now turn to the issue of whether West’s security interest in the law books purchased by LCI was properly perfected.
 

 In order to perfect a security interest in the collateral
 
 (i. e.
 
 law books), the secured party must file a financing statement in the Secretary of State’s Office.
 
 See
 
 Tex.Bus. & Comm.Code Ann. § 9.401(a)(3) (Vernon Supp. 1980-1981). A financing statement is sufficient if it contains the names and addresses of the secured party and the debtor, a description of the collateral, and is signed by the debtor. Tex.Bus. § Comm.Code Ann. § 9.402(a) (Vernon Supp. 1980-1981). The UCC-1 form financing statement filed by West was not sufficient to perfect its security interest because it was not signed by LCI, the debt- or. However, § 9.402(a) also provides that
 

 “[a] copy of the security agreement is sufficient as a financing statement if it contains the above information
 
 and is signed by the debtor.
 
 A carbon, photographic or other reproduction of a security agreement or a financing statement is sufficient as a financing statement if the security agreement so provides or if the original has been filed in this state.”
 

 Tex.Bus. & Comm.Code Ann. § 9.402(a) (Vernon Supp. 1980-1981) (emphasis added).
 

 Therefore, West can only have a perfected security interest in the collateral if the copy of the security agreement it filed meets the requirements of § 9.402(a). The copy of the agreement on file provides the names and addresses of both the secured party and the debtor and contains a list of the collateral securing West’s extension of credit. The only requirement that remains to be satisfied is whether it was signed by LCI, the debtor. The trustee contends that West’s security interest is unperfected because, although the security agreement was signed by LCI, the copy of the agreement filed with the Secretary of State was not separately signed by the debtor. We agree.
 

 Although recognizing that the photocopy of the security agreement on file with the Secretary of State contained no language providing that a photographic or other reproduction of the agreement would be sufficient as a financing statement and that no evidence had been presented to show that the original security agreement was filed in the state, the bankruptcy judge nevertheless concluded that the photocopy of the security agreement, which contained the debtor’s signature, was sufficient to meet the requirements of § 9.402(a).
 

 In addition to the bankruptcy judge’s opinion in this case, there have been only two other cases dealing with the validity of photocopied signatures on financing statements. Both of these cases, however, in
 
 *690
 
 volve constructions of U.C.C. § 9-402(1)
 
 [2]
 
 before the amendment of that section in 1972.
 
 [3]
 
 Prior to the 1972 amendment of the U.C.C., the relevant portion of § 9-402(1) read as follows: “A copy of the security agreement is sufficient as a financing statement if it contains the above information and is signed by both parties.”
 
 See
 
 Tex. Bus. & Comm.Code Ann. § 9.402(a) (Vernon 1968).
 

 In
 
 In re Kane,
 
 1 UCC Rep.Serv. 582, 586-87 (E.D.Pa.1962), the referee construed the above clause quoted from § 9-402(1) to mean that a photocopy of a security agreement containing the signatures of both parties does not conform to the stated requirement that it be signed by the parties.
 
 [4]
 
 However, a contrary result was reached by the referee in
 
 In re Bennett,
 
 6 UCC Rep. Serv. 994 (W.D.Mich.1969). In
 
 Bennett,
 
 the referee upheld the validity of a photocopy of the security agreement filed as a financing statement against the bankruptcy trustee’s challenge that the document had not been signed by the secured party, which was required by § 9-402(1) at the time. The referee noted that the policy underlying § 9 — 402 is to provide a system of notice filing and not to penalize secured creditors for technical imperfections.
 
 See
 
 Official U.C.C. Comment to § 9-402, part 2 and U.C.C. § 9-402(5) (providing that minor errors which are not seriously misleading do not invalidate a financing statement). Since the absence of the secured party’s signature from the document did not impair the ability of another creditor to be put on notice of the secured party’s interest in the collateral, the referee indicated his ruling was compelled by § 1-102 of the Uniform Commercial Code which states that its provisions should be liberally construed to promote the policies underlying the Code.
 

 In the present case, the bankruptcy judge held that, considering the policies underlying Tex.Bus. & Comm.Code Ann. § 9.402, “the better view is represented by
 
 Bennett
 
 and that the security agreement here is effective as a financing statement.” The bankruptcy judge concluded that “[ujnder the present circumstances the assertion by the trustee that [the photocopy of] the security agreement should not be given effect as a financing statement because it is not signed by the debtor is overly technical and does not promote the policy of notice filing.”
 

 Since the amendment of § 9.402 by the Texas Legislature in 1973, we do not believe the Texas courts would adopt this construction.
 
 [5]
 
 We would find it easier to construe the former language of § 9.402(a) as permitting the filing of a complete copy of a signed security agreement in place of a financing statement were it not for the subsequent addition of the words permitting just that type of substitution where the security agreement expressly permits it, or if the original agreement is itself filed in
 
 *691
 
 the state.
 
 [6]
 
 The construction urged by West, and followed by the bankruptcy judge, would make meaningless the words added by the drafters of the Uniform Commercial Code in 1972 and enacted by the Texas Legislature in 1973:
 
 i. e.
 
 a copy of_a_ security agreement containing the required information could always be substituted in place of a separate financing statement. This court will not ascribe such an idle and nugatory gesture to the drafters of the Code and the Texas Legislature. We construe Tex.Bus. & Comm.Code Ann. § 9.402(a) (Vernon Supp. 1980-1981) to mean that a copy of a security agreement containing the required information may be filed in place of a separate financing statement, or that the debtor’s signature on the financing statement is not necessary when a copy of the security agreement is attached thereto,
 
 only
 
 if the copy of the security agreement itself is signed by the debtor, or if the security agreement contains language providing that a copy thereof may be used as a financing statement, or if the original security agreement has been filed in the state.
 

 Our construction of § 9.402(a) is consistent with the Code’s definition of “signed.” “ ‘Signed’ includes any symbol executed or adopted by a party with present intention to authenticate a writing.” Tex.Bus. & Comm.Code Ann. § 1.201(39) (Vernon 1968). When a debtor “signs” a security agreement, he does so with a present intention to authenticate the agreement, and when he “signs” a financing statement, he does so with a present intention to authenticate the financing -statement. Since a financing statement has independent legal significance from a security agreement, a debtor cannot be said to have a present intention to authenticate a financing statement when he “signs” a security agreement, unless language in the security agreement gives the debtor notice that it may be used in place of a financing statement. When a photocopy of a security agreement is to serve as a financing statement, the “signed” requirement necessitates that the debtor execute a symbol with a present intention to authenticate the writing as a financing statement. This is done by either having the debtor “sign” the photocopy of the security agreement or by providing the debtor notice in the security agreement that it may be used as a financing statement. The only exception to the “signed” requirement is when the original security agreement has been filed in this state.
 

 Moreover, we find the reasoning contained in
 
 In re E. A. Fretz Co., Inc.,
 
 565 F.2d 366 (5th Cir. 1978), to be dispositive here. There, when faced with a financing statement that had not been signed by the secured parties, which at the time was required by Tex.Bus. & Comm.Code Ann.
 
 *692
 
 § 9.402(a) (Vernon 1968), this court held the non-signing secured parties’ interest in the collateral to be unperfected. In
 
 Fretz,
 
 Judge Brown found the reasoning employed in
 
 In re Murray,
 
 2 UCC Rep.Serv. 667 (D.Ore.1964), to be persuasive. The court in
 
 Murray
 
 indicated that at first glance it might appear that the interpretation requiring the secured party to sign the financing statement is too technical, but ,
 

 “[w]hen the state legislature swept away all statutes and judicial precedents concerning secured transactions in personal property, tangible and intangible, existing and future acquisitions, it never intended that the simpler requirements could be ignored. The process of simplification of statutory procedures does not give license to omit one of the simpler requirements.
 

 “It is true that the legislature did provide in [UCC § 9-402(5)] that:
 

 ‘(5) A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading.’
 

 “Obviously this pertains to minor errors in the contents of the statement and does not relate to one of the formal requisites of a financing statement such as the signatures of the secured parties.”
 

 Fretz,
 
 565 F.2d at 373 (quoting
 
 Murray, 2
 
 UCC Rep.Serv. at 670) (emphasis in original).
 

 Although the policy of notice filing is not frustrated by the photocopy of the security agreement filed by West as a financing statement,
 
 [7]
 
 we will not ignore one of the simpler requirements of a statute that swept away all the technical requirements for duly recording a chattel mort
 
 gage
 
 — i.
 
 e.
 
 that when a copy of the security agreement is to serve as a financing statement, the copy must be signed by the debt- or, or the security agreement must contain a statement indicating it may be used as a financing statement, or the original security agreement must be filed in the state.
 
 [8]
 
 Therefore, since West’s security interest in the collateral is unperfected, the trustee was entitled to avoid the obligation under 11 U.S.C. § 544(a)(1).
 
 See also
 
 Tex.Bus. & Comm.Code Ann. § 9.301(a)(1) & (c) (Vernon Supp. 1980-1981).
 

 The judgment of the district court is accordingly REVERSED and the case REMANDED for further proceedings not inconsistent with this opinion.
 

 [1]
 

 . At trial, the trustee in bankruptcy contended that the purchase order was insufficient to create an enforceable security interest because it was not signed by LCI, the debtor.
 
 See
 
 Tex. Bus. & Comm.Code Ann. § 9.203(a)(1) (Vernon Supp. 1980-1981). The trustee’s argument centered on the fact that Walter did not sign in the space designated for the purchaser, but in the space provided for a “personal guaranty.” The bankruptcy judge rejected this argument and apparently found after hearing the evidence that the purchase order was signed by LCI in conformance with § 9.203(a)(1). Tex. Bus. & Comm.Code Ann. § 1.201(39) defines the term “signed” to include “any symbol executed or adopted by a party with present intention to authenticate a writing.”
 

 On the purchase order, below the space designated for the buyer’s signature, is a section to be completed if the buyer is a professional corporation. This section calls for a personal guarantee of payment of the contract. On the signature line of this section there is a handwritten signature which appears to be that of Michael Walter, followed by the agency designation “Sec/Treas.”
 
 *689
 
 Since the trustee does not challenge on appeal the bankruptcy judge’s implicit finding that the purchase order, if otherwise sufficient to convey a security interest to West, was “signed” within the meaning of § 9.203(a)(1), we assume there is sufficient evidence to support such a finding and that it is not clearly erroneous. It should be noted that the trustee has not provided this court with a transcript of the evidence presented at trial.
 

 [2]
 

 . Tex.Bus. & Comm.Code Ann. § 9.402(a) (Vernon 1968).
 

 [3]
 

 . The Texas Legislature adopted the 1972 U.C.C. amendment to § 9 — 402(1) in 1973, which became effective on January 1, 1974. See Tex. Bus. & Comm.Code Ann. § 9.402(a) (Vernon Supp. 1980-1981).
 

 [4]
 

 . The referee held that a photocopy of a financing statement filed in another county was not signed by the debtor and the secured party. The referee construed “signed” to mean “an actual signature manually produced by a writing instrument in the hand of the signer in direct contact with the document being executed.” 1 UCC Rep.Serv. at 587.
 

 [5]
 

 . Not only was the
 
 Bennett
 
 decision, on which the bankruptcy judge relied, rendered without the benefit of the clarifying language that was added to U.C.C. § 9-402(1) in 1972 and to Tex.Bus. & Comm.Code. § 9.402(a) in 1973, the decision itself is inapposite to the issue we face since the question in
 
 Bennett
 
 was
 
 not
 
 whether it was necessary for the photocopy of the security agreement to be signed, but rather whether the secured party signed the original security agreement.
 

 In
 
 Bennett,
 
 the trustee in bankruptcy argued that the secured party had only executed his signature on the security agreement to effect an assignment and that the secured party failed to sign the document for the purpose of accepting the security agreement. It was this argument that was rejected by the referee in
 
 Bennett.
 

 [6]
 

 . The pre-1972 version of U.C.C. § 9-402(1) stated: “A copy of the security agreement is sufficient as a financing statement if it contains the above information and is signed by both parties.” See Tex.Bus. & Comm.Code Ann. § 9.402(a) (Vernon 1968). The 1972 U.C.C. amendment to the section, enacted in 1973 by the Texas Legislature, substituted “... and is signed by the debtor” in place of the phrase “... and is signed by both parties.” Then, immediately following the above sentence as amended, the 1972 U.C.C. amendment added this sentence: “A carbon, photographic or other reproduction of a security agreement or a financing statement is sufficient as a financing statement if the security agreement so provides or if the original has been filed in this state.” See Tex.Bus. & Comm.Code Ann. § 9.402(a) (Vernon Supp. 1980-1981).
 

 The Uniform Commercial Code Comment to the pre-1972 U.C.C. version states: “A copy of the security agreement may be filed in place of a separate financing statement, if it is signed by both parties and contains the required information.” Tex.Bus. & Comm.Code Ann., Official U.C.C. Comment to § 9.402, part 1, p. 422 (Vernon 1968). There is little change in the post-1972 U.C.C. amendment version, which states: “A copy of the security agreement may be filed in place of a separate financing statement, if it contains the required information and signature.” Tex.Bus. & Comm.Code Ann., 1972 Official U.C.C. Comment to § 9.402, part 1, p. 126 (Vernon Supp. 1980-1981). Neither the Official Comment nor the Official U.C.C. Reasons for the 1972 Change provide any reasons for the new sentence in the text of § 9.402(a).
 
 See
 
 Tex. Bus. & Comm. Code Ann., Official U.C.C. Reasons for 1972 Change, p. 125 (Vernon Supp. 1980-1981).
 

 [7]
 

 . This is so because a search in the Secretary of State’s Office under the name of the debtor (LCI) would warn any potential creditor of West’s asserted interest in the collateral described.
 

 [8]
 

 . Another reason offered for enforcing the technical signature requirement of U.C.C. § 9-402(1) is that
 

 “[t]he signature requirement of § 9-402 does not nor was it intended to enhance the quantum but rather the quality of the notice afforded by the filed financing statement. It ought not be assumed that the legislature acted unreasonably in sacrificing increased simplicity in favor of authenticity in the notice filing system. Not only does the new filing system minimize the availability of public information and increase the burden of inquiry on interested persons, it eliminates some of the safeguards to authenticity which many earlier statutes required, such as ac-knowledgements, witnessing and affidavits. It seems probable that the consensus among Code draftsmen deemed signatures as indispensable a concession to authenticity as addresses and a general collateral description were to the notice requirements of the new system. There has resulted what might be described as a system of authenticated notice filing.
 

 “Signatures are a simple and reliable means of linking the signatories to fraud or of exposing them to liability for failure to comply with statutory and contractual duties or for damages caused by inaccurate or ‘greedy’ filing. Because of the probative value of signatures there is some deterrent effect inherent in any requirement that signatures be affixed on documents available for public inspection as a prerequisite to validity. It follows as a matter of course that where the probative value of a signature is lacking so also is its deterrent effect.”
 

 In re Carlstrom,
 
 3 UCC Rep.Serv. 766, 771 (D.Maine 1966),
 
 quoted in Fretz,
 
 565 F.2d at 373-74 n.20.