**In re COLEMAN PIPE, INC., Debtor.**

**Bankruptcy No. 382–01502–F–11.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

May 8, 1984.

Herman A. Lusky, Dallas, Tex., for debtor.

H. DeWayne Hale, Jeffrey R. Fine, Strasburger & Price, Dallas, Tex., for Duferco, Ltd.

Arch A. Beasley, Blake Rasner, Biggers, Beasley, Amerine & Estes, Dallas, Tex., for Commercial Credit Business Loans, Inc.

## MEMORANDUM OPINION ON MOTION FOR RELIEF FROM AUTOMATIC STAY

JOHN C. FORD, Bankruptcy Judge.

On October 19, 1983, Duferco, Ltd., (hereinafter "Duferco"), filed its motion for relief from the automatic stay in this cause of action. The Debtor, Coleman Pipe, Inc., (hereinafter "Coleman Pipe"), filed its response in opposition to Duferco's motion for relief from the automatic stay and motion for leave to file third party action on November 9, 1983. The Court entered an order modifying the automatic stay to permit the sale of thirteen three-eighths inch pipe, (hereinafter "the pipe"), shipped by Duferco to Coleman Pipe, which is in Coleman Pipe's possession. The proceeds of the sale were ordered to be placed in an interest-bearing escrow account, and that a warehouseman's lien asserted by Bestway Warehouse where the pipe was stored was to be satisfied out of the proceeds of the sale. The Court fixed December 8, 1983 for the filing of a stipulation of facts and briefs. December 21, 1983 was set for the filing of a reply brief, if any, by Duferco. The parties submitted a first set of Stipulation of Facts on December 12, 1983 and a second set of Stipulation of Facts on March 2, 1984. Briefs were submitted by Duferco, Coleman Pipe and Commercial Credit Business Loans, Inc., (hereinafter "Commercial Credit").

### ISSUES

With respect to Duferco's motion for relief from the automatic stay, there are three issues pending before the Court. The first issue is whether Duferco has a valid security interest in the April 6, 1982 shipment of thirteen three-eighths inch pipe to Coleman Pipe over the security interest of Commercial Credit. I find this issue should be answered in the affirmative. The second issue is whether Duferco's security interest in the April 6, 1982 pipe shipment expired one hundred and eighty days after delivery of the pipe to Coleman Pipe. And, the third issue is whether Duferco's draw on the irrevocable letter of credit obtained by Coleman Pipe in favor of Duferco from the National Bank of Commerce of Dallas extinguished Duferco's security interest in the April 6, 1982 pipe shipment. I find that these last two issues must be answered in the negative.

# 340

## FINDINGS OF FACT

On October 13, 1981, Coleman Pipe, Debtor, and Commercial Credit entered into an Inventory Loan Agreement. Commercial Credit filed a UCC–1 Financing Statement, No. 177042 with the Secretary of State of Texas. UCC–1 No. 177042 provides that Commercial Credit will have a security interest in all of the now owned and hereafter acquired inventory of the Debtor, Coleman Pipe. On December 18, 1981, Commercial Credit filed a UCC–3 Amendment amending UCC–1, No. 177042 to show Coleman Pipe's change of address. A second UCC–3 Amendment was filed by Commercial Credit on September 17, 1982 to include federal tax and other deposit refunds. A third UCC–3 Amendment was filed by Commercial Credit amending UCC–1 No. 177042 on December 27, 1982 to show Coleman Pipe's change of address.

On September 9, 1981 Coleman Pipe sent Purchase Order No. 1094 for thirteen three-eighths inch pipe to Duferco. Coleman Pipe sent revised Purchase Orders Nos. 1093 and 1094 for the pipe to Duferco on February 9, 1983. Duferco and Coleman Pipe entered into an "Agreement of Amendment" on March 5, 1982 referencing the February 9, 1982 purchase orders and the sales agreement. Duferco on March 24, 1982 sent notice to Commercial Credit of Duferco's anticipated purchase money security interest in the pipe. On March 26, 1982 Duferco filed a UCC–1 Financing Statement No. 058503 with the Secretary of State of Texas covering the pipe.

Duferco shipped the pipe to Coleman Pipe on April 6, 1982 pursuant to Delivery Memorandum No. 1 indicating the pipe was being shipped from Brazil to Houston. Pursuant to the terms of the "Agreement of Amendment", Coleman Pipe applied to the National Bank of Commerce of Dallas on April 29, 1982 for a $100,000.00 irrevocable letter of credit in favor of Duferco. Coleman Pipe notified Duferco on April 30, 1982 by letter that it was cancelling the orders. A second shipment of pipe was then sent to Coleman Pipe on May 16, 1982 by Duferco pursuant to Delivery Memoran-

dum No. 2 indicating the pipe had been shipped from Brazil to Houston. On June 1, 1982, Duferco filed a UCC–1 Financing Statement No. 184255 with the Secretary of State of Texas covering this shipment. Coleman Pipe increased the amount of the letter of credit in favor of Duferco to $125,000.00 on July 1, 1982.

Purchase Order No. 1094 and revised Purchase Orders Nos. 1093 and 1094, and UCC–1 Financing Statements Nos. 058503 and 18425 covered the following inventory:

| Number of Joints | Description |
|---|---|
| | ERW CARBON STEEL CASING, PER API 5A GRADE J5 BLACK, BUTTRESS THREADED AND COUPLED THREAD PROTECTORS INSTALLED, RANGE 3 |
| 105 | 13⅜" O.D. X .430 W.T. |
| 400 | 13⅜" O.D. X .480 W.T. |
| | ERW CARBON STEEL CASING, PER API 5A GRADE J55, BLACK, PLAIN END, RANGE 3 |
| 185 | 13⅜" O.D. X .430 W.T. |
| 170 | 13⅜" O.D. X .480 W.T. |
| | ERW CARBON STEEL CASING, PER API 5A GRADE J55, BLACK, PLAIN END, RANGE 3 |
| 140 | 5,678.1 feet 13⅜" O.D. X .480 |
| 94 | 3,709.4 feet 13⅜" O.D. X .430 |
| | ERW CARBON STEEL CASING, PER API 5A GRADE J55, BLACK BUTTRESS THREADED AND COUPLED, RANGE 3, WITH METAL END PROTECTORS INSTALLED |
| 45 | 1,791.1 feet 13⅜" O.D. X .430 |

The total value of the pipe sold to Coleman Pipe by Duferco was $1,204,169.21. Coleman Pipe agreed to pay Duferco the sum of $1,204,169.21, but it defaulted on its obligation. Duferco drew down on the letter of credit by wire dated October 7, 1982. The amount paid by National Bank of Commerce of Dallas to Duferco on the letter of credit was $125,000.00. The amount remaining due on the pipe is $1,079,169.21.

On November 12, 1982, an involuntary petition under Chapter 7 was filed against Coleman Pipe, which was converted to a Chapter 11 proceeding on December 1, 1982. Duferco has a perfected security

interest in both the April 6, 1982 and May 16, 1982 shipments of pipe through the "Agreement of Amendment", UCC–1 Nos. 058503 and 184255 and the March 24, 1982 notice given to Commercial Credit. In its brief to the Court, Commercial Credit concedes that it does not dispute that Duferco has a perfected purchase money security interest in the thirteen three-eighths inch pipe by filing UCC–1 Nos. 058503 and 184255, and by notification of its expectation to acquire a purchase money security interest in the pipe as required by Section 9.312 of the Texas Business and Commerce Code. Nor does Commercial Credit dispute that the "Agreement of Amendment" of March 5, 1982 entered into by Duferco and Coleman Pipe is a security agreement. Instead, it argues that Duferco's security interest extinguished one hundred and eighty days after the delivery of the pipe to Coleman Pipe, but only to the April 6, 1982 shipment. Commercial Credit contends that Duferco's security interest in the April 6, 1982 shipment expired in accordance with the terms of the "Agreement of Amendment". At the same time, it acknowledges in its brief that Duferco has a perfected purchase money security interest in the May 16, 1982 shipment of pipe to Coleman Pipe.

Although Commercial Credit may concede that Duferco had a valid security interest in the pipe, its claim that Duferco's interest expired after one hundred and eighty days from receipt of the pipe by Coleman Pipe necessitates discussion as to the security agreement, the financing statements, purchase orders and the letter of credit.

Duferco took all the steps required to perfect its purchase money security interest in the thirteen three-eighths inch pipe it shipped to Coleman Pipe on April 6, 1982 and May 16, 1982. The parties entered into an "Agreement of Amendment" on March 5, 1982 which the Court finds to be a security agreement as defined by the Texas Business and Commercial Code. A contractual agreement which creates, reserves or provides a security interest is a "security agreement". TEX.BUS. & COMM.

CODE ANN. § 9.105(a)(12) (Vernon's Supp. 1980–1981). The Texas Business and Commercial Code defines "security interest" as an interest in personal property that secures payment or performance of an obligation. When a seller retains or reserves title to goods notwithstanding their shipment or delivery to the buyer, the seller has in effect a reservation of a security interest. TEX.BUS. & COMM.CODE ANN. § 1.201(37) (Vernon's Supp.1980–81).

The rule of law to be applied in the construction of a contract is to ascertain and give effect to the real intention of the parties, as reflected by the language of the agreement. 14 TEX.JUR.3rd. Contracts § 185 (1981); *R & P Enterprises v. La Guarta,* 596 S.W.2d 517 (Tex.1980). The contract must be read, considered and construed in its entirety. It is the duty of the Court to interpret the entire instrument and to consider each and every part with every other provision of the contract. In this manner, the Court can determine the effect and meaning of one part on any other part to make clear the intent of the parties. 14 TEX.JUR.3rd Contracts § 188 (1981); *Smart v. Tower Land Investment, Co.,* 597 S.W.2d 333 (Tex.1980). The Court is also obliged to consider any or all instruments relating to the same transaction, even though not executed contemporaneously or expressly referring to each other in determining the intent of the parties to a contract. 14 TEX.JUR.3rd Contracts § 190 (1981); *Parks v. Frankfurt,* 476 S.W.2d 717, writ ref. N.R.E. (Tex.Civ.App. 9th Dist.1972).

The "Agreement of Amendment" of March 5, 1982 and specifically several of its paragraphs support the conclusion that Duferco reserved and retained title to the thirteen three-eighths inch pipe, notwithstanding their shipment or delivery to Coleman Pipe. In paragraph two of the agreement, the parties intended that the delivery of the pipe to Coleman would be on a consignment basis. That is, Duferco agreed to ship the pipe to Coleman Pipe, and Coleman Pipe agreed to pay for the

pipe it sold and return or pay for whatever it did not sell. Paragraph two specifically provides that Coleman Pipe shall keep the pipe "physically segregated from all other merchandise in its possession ..." Here, the fact that the pipe was to be kept from being co-mingled with any other goods in Coleman Pipe's possession is significant. By keeping the pipe separate, the parties intended to give notice that this merchandise was distinct from all the other items in Coleman Pipe's possession. It was meant to remain under Duferco's title until sold by Coleman Pipe. Duferco had the right under the terms of Paragraph (6)(c) to inspect not only the sales records, but to take and supervise a physical inventory of the pipe shipped to Coleman. In other words, Duferco could at any reasonable time check on the status of the pipe in Coleman's possession. This fact evidences in effect that Duferco retained title to the pipe while it sat in Coleman's warehouse(s). Otherwise, Coleman would not have agreed to the inspection of sales records and the physical inventory of the pipe in its possession. Once sold, Coleman Pipe was then free to comingle the pipe with its other inventory. This finding is upheld by paragraphs three, four, six, seven, nine and ten of the agreement.

The part of the "Agreement of Amendment" that specifically addresses title to the goods is paragraph three. This paragraph provides, "title to the Goods shall remain in Duferco until sold by Coleman". The intent of the parties in light of paragraph three is clear. Duferco was to retain title to the pipe until Coleman Pipe sold it to a third party. In addition, if Coleman Pipe did not sell the pipe after one hundred and eighty days from the bill of lading date, Coleman was obligated to pay Duferco for the unsold goods. This is provided for by paragraph four of the agreement.

■ Both parties are in disagreement as to the meaning of paragraph ten. This part of the "Agreement of Amendment" provides the following:

"All Goods not accounted for as sold by Coleman and not returned to Duferco shall be conclusively deemed to have been sold by Coleman and Coleman shall be accountable therefor."

Commercial Credit argues that this paragraph in conjunction with paragraph four establishes that Duferco's security interest in the pipe extinguished after one hundred and eighty days from the bill of lading date. The Court disagrees.

The intent of paragraphs four and ten, particularly in light of paragraph six, is that Coleman was required to pay Duferco for the pipe whether it had sold the merchandise or not. If Coleman had sold any of the pipe after one hundred and eighty days from receipt, it was obligated to pay Duferco. On the other hand, if it had not sold the pipe after this time, Coleman was still obligated to pay Duferco. Paragraph ten would have specifically provided that title in the pipe would expire upon the passage of one hundred and eighty days had the parties so intended. It is clear that the parties did not intend for title in the pipe to expire after this time.

Paragraph six is of particular importance in that it elucidates the issue of expiration of Duferco's security interest after one hundred and eighty days from receipt of the pipe by Coleman Pipe. Duferco was entitled to a monthly accounting of the pipe and had a right to conduct its own inspection of the pipe at any reasonable time. Any discrepancy that was found between the inventory and sales records was to be borne by Coleman Pipe. Duferco could demand immediate payment from Coleman for the discrepancy. After this accounting and payment, title would no longer remain in Duferco. If Duferco desired it could conduct an inspection of the sales records and take an inventory of the pipe on the one hundred and eightieth day, or possibly even after that date to determine that the pipe had indeed been sold. The fact that paragraph ten of the agreement deems the pipe to have been conclusively sold after one hundred and eighty days after it had been in Coleman Pipe's possession does not

extinguish Duferco's security interest in it. This part requires only Coleman Pipe be accountable for the pipe even after the one hundred and eighty days.

In addition to the "Agreement of Amendment", Duferco perfected its title in the thirteen three-eighths inch pipe it shipped to Coleman on April 6, 1982 and May 16, 1982 by filing financing statements. It filed UCC–1 Nos. 058503 and 184255 with the Secretary of State of Texas on March 26, 1982 and June 1, 1982, respectively. In order to perfect a security interest in collateral, the secured party must file a financing statement with the Secretary of State's Office. TEX.BUS. & COMM.CODE ANN. § 9.401(a)(3) (Vernon Supp.1980–81). A financing statement is sufficient if it contains the names and addresses of the secured party and the debtor, a description of the collateral, and is signed by the debtor. TEX.BUS. & COMM.CODE ANN. § 9.402(a) (Vernon Supp.1980–81). The UCC–1 form financing statements filed by Duferco are sufficient to perfect its security interest in the pipe since they meet the requirement of Section 9.402(a) of the Texas Business and Commercial Code.

Duferco has a perfected purchase money security interest in the pipe and identifiable cash proceeds, which has priority over Commercial Credit's security interest. A subsequent purchase money security interest in the same collateral and identifiable cash proceeds has priority if it complies with certain requirements of Section 9.312(c) of the Texas Business and Commercial Code. A purchase money security interest has priority if it is perfected at the time the debtor receives possession of the goods, notification is given to the holder of the conflicting security interest within five years prior to the debtor obtaining possession and the notification states that the person giving notice expects to acquire a purchase money security interest in the same inventory. TEX.BUS. & COMM. CODE ANN. § 9.312(c) (Vernon's Supp. 1980–81). Duferco's notice to Commercial Credit dated March 24, 1982 complies with these requirements, and, therefore, has priority over Commercial Credit's security in-

terest. Accordingly, Duferco has an unexpired valid security interest in the April 6, 1982 shipment of pipe to Coleman which is at issue here.

The third issue before the Court is whether Duferco's draw on the letter of credit obtained by Coleman Pipe in favor of Duferco extinguished Duferco's security interest in the April 6, 1982 shipment of pipe. The established rule of law in Texas is that a letter of credit is entirely independent of the underlying contract giving rise to the transaction. TEX.BUS. & COMM.CODE ANN. § 5.114 (Vernon's Supp.1980–81); *East Girard Savings Association v. Citizens National Bank and Trust Company of Baytown*, 593 F.2d 598 (5th Cir.1979); *Republic National Bank of Dallas v. N.W. National Bank of Ft. Worth*, 578 S.W.2d 109 (Tex.1979); *Siderius, Inc. v. Wallace Co., Inc.*, 583 S.W.2d 852 (Tex.Civ.App. 1979); and *Summit Ins. Co. of New York v. Central Nat. Bank of Houston*, 624 S.W.2d 222 (Tex.Civ.App.1981). Under a letter of credit, the issuer agrees to pay the beneficiary on presentment of documentation indicating that the other party has defaulted on a payment obligation. TEX. BUS. & COMM.CODE ANN. §§ 5.102(a)(1), (c); 5.103(a)(1) (Vernon's Supp.1980–81).

■ National Bank of Commerce of Dallas, as the issuer of the letter of credit in the amount of $125,000.00, was obligated to pay Duferco without reference to the rights and obligations of Duferco, Coleman Pipe and Commercial Credit to the underlying contracts and transactions. TEX.BUS. & COMM.CODE ANN. § 5.114, comment (Vernon's 1980–1981) and *Republic National Bank of Dallas v. National Bank of Ft. Worth, supra* at 109. Since the letter of credit is a separate contract independent from the underlying transaction, payment under the letter of credit does not extinguish the rights and obligations under the underlying contract. *Id.*, at 116. The Court finds that Duferco's draw on the letter of credit in its favor did not extinguish its perfected purchase money security interest in the pipe. Duferco's security

**344**

interest has priority over that of Commercial Credit.

 A minor issue before this Court is that of the significance of the purchase orders submitted by Coleman Pipe to Duferco for the pipe. The parties are at odds as to whether Duferco reserved a security interest in the pipe through Purchase Order No. 1094 and revised Purchase Orders Nos. 1093 and 1094. The courts have been willing to find that language in a purchase order which provides that the seller retains title to goods until paid is sufficient to reserve a security interest in goods to the seller. *Sommers v. International Business Machines*, 640 F.2d 686 (5th Cir.1981); *In re Haus*, 18 B.R. 413 (Bkrtcy.D.S.C., 1982). Cf. *In re General Coffee Corp.*, 32 B.R. 23 (Bkrtcy.S.D.Fla.1983). This Court is bound by the Fifth Circuit's ruling in the case of *Sommers v. International Business Machines, supra.* In that case, the Debtor had signed a purchase order agreeing to purchase books from West Publishing Company. The purchase order contained a statement to the effect that "this contract is subject to approval by vendor, who retains title to said books until paid ...". *Id.*, at 688. West Publishing Company filed a UCC–1 with the Secretary of State of Texas and attached a photocopy of the purchase order to the financing statement. Justice Reavley, writing for the court, ruled that the language in the purchase order was sufficient to reserve a security interest in the books to West Publishing Company. However, West's security interest was unperfected because the debtor had not signed the financing statement.

Both parties have cited the *Sommers* case, *supra*, in support of their arguments. The Court finds that the *Sommers* case is distinguishable from this case. Upon close examination of the purchase orders from Coleman Pipe to Duferco, the Court cannot ascertain any language in the purchase orders that specifically states that Duferco reserved title to the pipe until paid. The purchase orders are simply requests submitted by Coleman Pipe to Duferco to pur-chase pipe. In this instance, the purchase orders are different from those in the *Sommers* case, *supra*. However, had the purchase orders contained language similar to that of the purchase order in the *Sommers* case, this Court would have found that Duferco had also reserved a security interest in the purchase orders from Coleman Pipe to Duferco.

Duferco's motion for relief from the automatic stay is hereby granted to permit Duferco to foreclose and enforce its security interest against Coleman Pipe. Duferco is entitled to the proceeds of the sale of the pipe that was ordered on November 30, 1983.