Donald G. NAVARRO, As Trustee for
Compco Computer Center, Inc.,
Debtor, Plaintiff,

v.

INTERNATIONAL BUSINESS
MACHINES CORPORATION,
Defendant.

Bankruptcy No. 385–32645–A–11.
Adv. No. 385–8177.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Feb. 20, 1987.

Glenn Sodd, Dawson & Sodd, Dallas, Tex., for plaintiff Donald G. Navarro as Trustee for Compco Computer Centers, Inc., debtor.

Jerry L. Beane, Strasburger & Price, Dallas, Tex., for defendant, Intern. Business Machines Corp.

OPINION

HAROLD C. ABRAMSON, Bankruptcy Judge.

Plaintiff, Donald G. Navarro, as Trustee for Compco Computer Centers, Inc. ("Trustee"), made a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure for an order directing entry of partial summary judgment in favor of the Trustee and against Defendant, International Business Machines Corporation ("IBM") alleging that the lien asserted by IBM was unperfected as IBM failed to file a proper financing statement signed by the debtor.

This proceeding is a core proceeding under Section 544 of the U.S. Bankruptcy Code and 28 U.S.C. § 157. The following constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

The facts are uncontroverted. The Debtor, Compco Computer Centers, Inc. ("Debtor"), entered into a personal computer retail dealer agreement (the "agreement") with the Defendant, IBM. The Debtor signed this agreement, and later signed a renewal, but did not ever sign a financing statement. An unsigned financing statement was filed with the Secretary of State of Texas with a photocopy of the agreement attached. Neither the financing statement nor the documents attached thereto, as filed with the Secretary of State, contained the original signature of the Debtor.

The issue of law raised by the Trustee is whether the IBM financing statement as filed was sufficient to perfect any lien in favor of IBM. The court holds that it was not.

Texas Business and Commerce Code Section 9.402(a) provides in part as follows:

"A financing statement is sufficient if it gives the names of the debtor and the

secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral ... A copy of the security agreement is sufficient as a financing statement if it contains the above information and is signed by the debtor. A carbon, photographic or other reproduction of a security agreement is sufficient as a financing statement if the security agreement so provides or if the original has been filed in this state."

Texas Business and Commerce Code section 1.201(39) provides that " '[s]igned' includes any symbol executed or adopted by a party with present intention to authenticate a writing."

In the case at bar, nothing filed with the Secretary of State contained the original signature of the Debtor. In addition, the security agreement did not provide for the filing of a photocopy of the security agreement to suffice as a financing statement. No notice was provided to the Debtor that this method of perfection might be employed.

The Trustee, in support of his motion, cites the court to the case of *Sommers v. International Business Machines*, 640 F.2d 686 (5th Cir.1981), in which that court was faced with a virtually identical situation. The court in *Sommers* held that the photocopy of the security agreement itself, in order to show a present intention to authenticate the agreement, must be signed by the debtor.

"When a debtor 'signs' a security agreement, he does so with a present intention to authenticate the agreement, and when he 'signs' a financing statement, he does so with a present intention to authenticate the financing statement. Since a financing statement has independent legal significance from a security agreement, a debtor cannot be said to have a present intention to authenticate a financing statement when he 'signs' a se-

curity agreement, unless language in the security agreement gives the debtor notice that it may be used in place of a financing statement. When a photocopy of a security agreement is to serve as a financing statement, the 'signed' requirement necessitates that the debtor execute a symbol with a present intention to authenticate the writing as a financing statement. This is done by either having the debtor 'sign' the photocopy of the security agreement or by providing the debtor notice in the security agreement that it may be used as a financing statement. The only exception to the 'signed' requirement is when the original security agreement has been filed in this state."

*Sommers,* 640 F.2d at 691. The court considers this case to be controlling here in finding the agreement to be insufficient as a financing statement.

IBM claims that since the security agreement contains language which expressly reserved a purchase money security interest in each of the IBM products, and that the Debtor expressly agreed to join with IBM in filing financing statements to perfect IBM's security interest, the agreement is sufficient to give notice to the Debtor that the agreement might be used as a financing statement. This language may very well communicate an intention of the Debtor for IBM to have a perfected security interest. However, it is not sufficient to put the Debtor on notice that the security agreement might be used as a financing statement, nor does it show that the Debtor had a present intention to authenticate the agreement as a financing statement.

IBM correctly notes that Texas, through section 9 of the Texas Business and Commerce Code, has adopted a system of "notice filing." Filing of a financing statement with the Secretary of State puts the world on notice that a security interest has been taken in the collateral described therein. Notice to third parties is a fundamental purpose of the Article 9 filing system. *J.K. Merrill & Son, Inc. v. Carter,* 108 Idaho 749, 702 P.2d 787, 792 (1985).

The *Sommers* case also addresses this issue and resolves it in favor of the Trustee. The *Sommers* court recognized the importance of both this underlying policy and of the need not to be overly technical in these matters. However, the court felt that the 1972 Amendments to section 9.402, adopted by the Texas legislature in 1973, reflected a desire expressed by the legislature that courts construe these requirements strictly. Again, the court finds the Fifth Circuit's holding in *Sommers* persuasive in this regard.

■ Even if the failure of IBM to comply with § 9.402(a) did not render the financing statement insufficient, the court finds that IBM's financing statement was seriously misleading and therefore insufficient to perfect IBM's security interest. Tex.Bus. & Comm.Code section 9.402(h) provides that minor errors which are not seriously misleading do not invalidate a financing statement. IBM claims that IBM's financing statement and security agreement communicated to all parties concerned that IBM had a security interest in the collateral described, and that IBM would have disclosed further details upon request of an inquiring party. The court rejects this representation as conjectural and inconsistent with the record.

It is the description in the financing statement which the court finds misleading. The financing statement covers "all inventories, including but not limited to personal computers." The agreement reserves a purchase money security interest "in each of the IBM products shipped to the Dealer under this Agreement and in the proceeds thereof ..." "IBM Products" is defined on page 1 of the agreement as follows: "The term 'IBM Products' as used in this Agreement refers to, *and is limited to,* Hardware Products, Software Products, Commissionable Items, and/or other items listed in the 'IBM Personal Computer Dealer Price Schedule'." (Emphasis added). "All inventories" as used in the financing statement claims a security interest of much greater scope than was agreed to by the debtor.

While a financing statement may have the effect of restricting the perfection of a security interest created by a security agreement, *see In re Door Supply Center, Inc.,* 3 B.R. 103 (Bankr.D.Idaho 1980); *In re H & I Pipe & Supply Co., Inc.,* 44 B.R. 949 (Bankr.M.D.Tenn.1984); *Allis-Chalmers Corp. v. Staggs,* 117 Ill.App.3d 428, 72 Ill.Dec. 840, 453 N.E.2d 145 (1983); *In re Marta Cooperative, Inc.,* 74 Misc.2d 612, 344 N.Y.S.2d 676 (N.Y.Co.Ct.1973), the expanded scope of the unilateral claim such as we have here is abusive in that it clearly impairs the smooth operation of commercial financing arrangements by subjecting the debtor and other creditors to unwarranted complications in determining the true extent of the parties' contractual relationship. The misleading nature of the conflicting descriptions defeats the purposes of the notice filing system, and makes the filing fatally defective.

The court therefore finds that IBM's security interest is unperfected due to the failure by IBM to file a proper financing statement signed by the Debtor pursuant to Texas Business and Commerce Code section 9.402(a), and due to the seriously misleading nature of the descriptions contained therein. The Trustee's motion for partial summary judgment is accordingly granted.