ALLIS-CHALMERS CORPORATION *et al.*, Plaintiffs-Appellees, *v.* JERRY STAGGS *et al.*, Defendants-Appellants.

Fifth District   No. 82—453

Opinion filed September 2, 1983.

Mark Tungate, of Bowen, Miller & Tungate, of Flora, for appellant Fred Bailey.

James F. Jarrett, of Schniederjon, Weber, Harvey and Stephens, of Ef-

fingham, for appellees.

JUSTICE JONES delivered the opinion of the court:

This replevin action was instituted by the plaintiffs, Allis-Chalmers Corporation and Allis-Chalmers Distribution Service Corporation, to recover from the defendant, Fred Bailey, personal property in which the plaintiffs claimed to have a perfected security interest. The trial court granted the plaintiffs' motion for summary judgment, finding as a matter of law that the parties had conflicting security interests in the disputed property and that the plaintiffs' security interest was prior in time and thus superior to the defendant's. The defendant contends on appeal that the trial court erred in construing the plaintiffs' security interest too broadly and that an issue of fact thus remains as to the extent of the parties' interest in the property. We agree and accordingly reverse the court's grant of summary judgment.

On July 19, 1979, debtor Staggs Farm Equipment, Inc. (Staggs), an Allis-Chalmers dealer, granted the plaintiffs a security interest pursuant to the terms of two separate security agreements. The property named as collateral in the agreement with Allis-Chalmers Corporation was described as follows:

> "The Debtor's inventory of new machinery manufactured or sold by Secured Party, attachments, accessories and replacement parts therefor now owned or hereafter acquired *by the Debtor from the Secured Party* plus all proceeds derived therefrom. The collateral is more specifically described in Debtor's purchase orders, invoices, and periodic inventories signed by both parties. For the purpose of identification, such purchase orders, invoices and inventories, as and when executed, are by reference made a part hereof." (Emphasis added.)

The agreement with Allis-Chalmers Distribution Service corporation contained a virtually identical description as follows:

> "The Debtor's inventory of new machinery manufactured or sold by Allis-Chalmers Corporation, attachments, accessories and replacement parts therefor now owned or hereafter acquired *by the Debtor from Allis-Chalmers Corporation,* plus all proceeds derived therefrom. The collateral is more specifically described in Debtor's purchase orders, invoices, and periodic inventories signed by Debtors and Allis-Chalmers Corporation. For the purpose of identification, such purchase orders, invoices and inventories, as and when executed, are by reference made a part hereof." (Emphasis added.)

On July 25, 1979, the plaintiffs filed their respective financing statements with the Illinois Secretary of State. Both statements described the collateral as follows:

"The debtor's inventory of new and used Farm Equipment, new and used Lawn and Garden Equipment, together with implements, attachments and accessories thereto and replacement parts therefor *manufactured by or offered for sale by Allis-Chalmers Corporation* now owned or hereafter acquired, on which the debtor has given or hereafter grants Allis-Chalmers Corporation a security interest. Proceeds of Collateral are also covered." (Emphasis added.)

On February 20, 1980, Staggs purchased a farm implement business from defendant Bailey, another Allis-Chalmers dealer, pursuant to the terms of a contract for sale executed on that date. Included in the transaction was the sale of parts in stock as inventoried on February 1, 1980, and valued at $100,000. Bailey filed a financing statement with the Illinois Secretary of State on February 29, 1980, in which the collateral was described as follows:

"All stock in trade, inventory, parts and replacement parts now owned or hereinafter [sic] acquired and all accounts receivable and chattel paper now owned or hereinafter [sic] acquired."

Staggs discontinued business operations in August 1981, and on September 28, 1981, the plaintiffs brought the instant replevin suit. In their complaint the plaintiffs sought to recover from defendant Bailey the inventory of Staggs that Staggs "[had given] or granted Plaintiffs a security interest in."

The plaintiffs subsequently moved for summary judgment based on the priority of their security interest over that of defendant Bailey. Bailey likewise filed a motion for summary judgment in which he maintained that the plaintiffs' security interest did not cover the property that he sold to Staggs by contract on February 20, 1980.

After hearing arguments of the parties, the trial court granted the plaintiffs' motion for summary judgment. The court's judgment was based on the following findings:

"7. On July 25, 1979, Plaintiffs perfected a security interest in 'The debtor's inventory of new and used Farm Equipment, new and used Lawn and Garden Equipment together with implements, attachments and accessories thereto and replacement parts therefor manufactured by or offered for sale by Allis-Chalmers Corporation now owned or hereafter acquired, on which the debtor has given or hereafter grants Allis-Chalmers Corporation a security interest,' including proceedings [sic]

from said collateral.

\* \* \*

9. Subsequent, and unbeknownest [*sic*] to Plaintiffs, on February 29, 1980, Defendant filed a financing statement with the Secretary of State's office claiming a security interest in 'all stock in trade, inventory, parts and replacements [*sic*] parts now owned or hereinafter acquired and all accounts receivable and chattel paper now owned or hereinafter acquired,' which did not include proceeds from said collateral.

\* \* \*

11. Plaintiffs and Defendant, FRED BAILEY, have conflicting security interests in 'The debtor's inventory of new and used Farm Equipment, new and used Lawn and Garden Equipment, together with implements, attachments, and accessories thereto and replacement parts therefor manufactured by or offered for sale by Allis-Chalmers Corporation now owned or hereafter acquired.'

12. 'Conflicting security interests rank according to priority in time of filing or perfection.' Ill. Rev. Stat. Ch. 26, 9—312(5)(a).

13. Plaintiffs [*sic*] perfected security interest ranks higher than Defendant, FRED BAILEY's because it was filed and perfected prior in time.

14. There is no genuine issue of fact to be determined by the Court as to Count I of the Plaintiffs' Complaint."

On appeal from this judgment defendant Bailey contends that the plaintiffs' security interest was limited by the terms of their security agreements to inventory owned by Staggs on July 19, 1979, or acquired by Staggs from Allis-Chalmers corporation after that date, including proceeds of that inventory. Thus, inventory acquired from defendant Bailey under the contract of February 20, 1980, would not have come within the description of property covered by the plaintiffs' security interest. Since the plaintiffs had no interest in the property sold to Staggs under the contract, Bailey asserts, there is no conflict between the parties' security interests as to this property, and the rule regarding conflicting security interests does not apply.

As defendant Bailey points out, the trial court's finding that the parties had conflicting security interests was based on the description of collateral contained in the plaintiffs' financing statements. This description varies somewhat from the description in the plaintiffs' security agreements in that it does not restrict the plaintiffs' interest in after-acquired inventory to that "acquired by the Debtor from Allis-

Chalmers Corporation." Rather, the financing statement description refers to inventory "manufactured by or offered for sale by Allis-Chalmers Corporation." From this description the trial court found that the plaintiffs' security interest extended to all after-acquired inventory manufactured by Allis-Chalmers, including that acquired from a third party.

■ Because of this discrepancy the validity of the trial court's decision depends upon whether the description found in the plaintiffs' financing statements was sufficient to extend the plaintiffs' security interest to all after-acquired Allis-Chalmers inventory. While we are aware of no Illinois case dealing with the effect of such a discrepancy between a financing statement and a security agreement, courts in other jurisdictions have interpreted the applicable provisions of the Uniform Commercial Code (Code) to hold that when a financing statement describes a greater quantity of property than that described in the corresponding security agreement, the security interest is defined by the narrower description contained in the security agreement. (See, *e.g., Mitchell v. Shepherd Mall State Bank* (10th Cir. 1972), 458 F.2d 700; *In re Mann* (W.D. Va. 1970), 318 F. Supp. 32; *Jones & Laughlin Supply v. Dugan Production Corp.* (N.M. App. 1973), 85 N.M. 51, 508 P.2d 1348; see also *American Card Co. v. H.M.H. Co.* (1963), 97 R.I. 59, 196 A.2d 150; *Cain v. Country Club Delicatessen of Saybrook, Inc.* (1964), 25 Conn. Supp. 327, 203 A.2d 441.) An examination of these decisions and the Code provisions upon which they rely leads us to adopt this rule in the instant case.

■ ■ In holding that a broader description of collateral in a financing statement is ineffective to extend a security interest beyond that stated in the security agreement, courts have noted that it is the security agreement itself that "creates or provides for a security interest" (Ill. Rev. Stat. 1981, ch. 26, par. 9—105(1)(l)). The function of the financing statement is merely to put third parties on notice that the secured party who filed it may have a perfected security interest in the collateral described. (*Mitchell v. Shepherd Mall State Bank.*) The Code further provides that a security agreement "is effective according to *its* terms" (Ill. Rev. Stat. 1981, ch. 26, par. 9—201) (emphasis added), and section 9—203(1)(a) (Ill. Rev. Stat. 1981, ch. 26, par. 9—203(1)(a)) states that a security interest is not effective against third parties unless the debtor has signed a security agreement which contains a description of the collateral. These provisions indicate that a security interest cannot exist in the absence of a security agreement (see *In re Mann*), and it follows that a security interest is limited to property described in the security agreement. *Jones & Laughlin Sup-*

*ply v. Dugan Production Corp.; Mitchell v. Shepherd Mall State Bank.*

This view has been expressed by the authors of the Illinois Code Comment in referring to section 9—110 of the Code, which states the requirement for sufficiency of a description under article 9. They observe:

> "It is important to bear in mind *** that a general description adequate in a financing statement (sec. 9—402) may not be sufficient in the underlying security agreement (sec. 9—203(1)(a)). The former is solely to give notice; the latter creates substantive rights in collateral. *** The security agreement and the financing statement are double screens through which the secured party's rights to collateral are viewed, and his rights are measured by the narrower of the two. [Citations.]" Ill. Ann. Stat., ch. 26, par. 9—110, Illinois Code Comment, at 85 (Smith-Hurd 1974.)

To the same effect is the commentary accompanying section 9—110 in 4 Andersen, Uniform Commercial Code 124-25 (2d ed. 1971):

> "When there is a conflict between the financing statement on file and the security agreement as to the property involved, the latter prevails for the reason that no security interest can exist in the absence of a security agreement, and therefore a financing statement which goes beyond the scope of the agreement has no effect to that extent.
>
> * * *
>
> Inconsistency between the financing statement and the security agreement may *** arise where the financing statement states a greater or lesser quantity than the security agreement. The description in the financing statement can neither reduce nor enlarge the security interest actually created by the parties. Consequently, when the financing statement describes a greater quantity of property or additional property beyond that described in the security agreement, the 'surplus' description has no effect; the security interest is only as extensive as the property described in the security agreement and the financing statement is not effective to do more than perfect the interest in that property."

■ Applying this rule to the instant case, we find that the trial court erred in determining the parties' rights in the disputed property by reference to the description of collateral contained in the plaintiffs' financing statements. The plaintiffs' security interest was limited, therefore, to that portion of Staggs' inventory that was owned by

Staggs on July 19, 1979, or acquired thereafter by Staggs from Allis-Chalmers, and it could not be extended by the broader description contained in the plaintiffs' financing statements. We note parenthetically that the trial court overlooked the final clause of the financing statement description that referred to inventory "on which the debtor has given or hereafter grants Allis-Chalmers Corporation a security interest" in making its ruling. Since the plaintiffs had no interest in Allis-Chalmers inventory acquired after July 19, 1979, from a third party, Bailey is entitled to this inventory by virtue of his purchase money security interest in property sold under the contract of February 20, 1980.

The parties concede on appeal that there is no dispute as to defendant Bailey's superior right to non-Allis-Chalmers parts in the debtor's inventory nor as to the plaintiffs' superior claim to Allis-Chalmers parts purchased directly by Staggs from Allis-Chalmers Corporation after July 19, 1979. A question of fact remains, however, as to which of the Allis-Chalmers parts in Staggs' inventory were purchased from Allis-Chalmers and which were purchased from defendant Bailey pursuant to the contract of February 20, 1980. The trial court was not justified, as the plaintiffs assert, in assuming that the inventory purchased from defendant Bailey had been sold and then replaced by parts purchased from Allis-Chalmers in the year and a half that Staggs remained in business following the sale of February 20, 1980. Further, although the trial court had before it a computer printout of all the parts in Staggs' inventory on the date of closing, the record does not indicate, by way of invoices, purchase orders, or other documents, which parts in this inventory were purchased directly from Allis-Chalmers and which were derived from defendant Bailey.

Since an issue of fact thus remains as to the extent of the parties' interest in the disputed inventory, the trial court's grant of summary judgment for the plaintiffs was erroneous and must be reversed. Contrary to the plaintiffs' assertion on appeal, the parties' filing of cross-motions for summary judgment neither established that there was no issue of material fact nor obligated the court to render summary judgment. (*Beverly Bank v. Alsip Bank* (1982), 106 Ill. App. 3d 1012, 436 N.E.2d 598.) The case of *Allen v. Meyer* (1958), 14 Ill. 2d 284, 152 N.E.2d 576, cited by the plaintiffs, does not hold to the contrary, as the court there found that the parties were correct in their view that only a question of law was involved. Thus, the court's independent determination as to whether a genuine issue of fact remained was not precluded merely because both parties moved for summary judgment. See *Beverly Bank v. Alsip Bank; Precision Ex-*

*trusions, Inc. v. Stewart* (1962), 36 Ill. App. 2d 30, 183 N.E.2d 547.

For the foregoing reasons, we reverse the judgment of the circuit court of Clay County and remand this cause for further proceedings.

Reversed and remanded.

KARNS and KASSERMAN, JJ., concur.