In re MARTIN GRINDING & MACHINE
WORKS, INC., an Illinois
Corporation, Debtor.

FOREST PARK NATIONAL
BANK, Plaintiff,

v.

MARTIN GRINDING & MACHINE
WORKS, INC., Defendant.

Bankruptcy No. 83 B 00406.
Adv. No. 84 A 0385.

United States Bankruptcy Court,
N.D. Illinois, E.D.

Sept. 17, 1984.

David Welch, Dozoryst & Brustein, Chicago, Ill., for debtor-defendant, Martin Grinding & Machine Works, Inc.

Richard Witry, Chicago, Ill., for plaintiff-creditor, Forest Park National Bank.

## MEMORANDUM OPINION AND ORDER

FREDERICK J. HERTZ, Bankruptcy Judge.

### I

This action comes on a motion by Forest Park National Bank (hereinafter "plaintiff") pursuant to Bankruptcy Rule 7001 to determine the extent of its security interest in the property owned by Martin Grinding & Machine Works, Inc. (hereinafter "defendant"). The defendant seeks to dismiss the complaint of the plaintiff for failure to state a claim upon which relief can be granted pursuant Bankruptcy Rule 7012.

### II

In late August of 1977, the defendant applied with the plaintiff for a Small Business Administration (hereinafter "SBA") guaranteed loan in the amount of $350,000. On September 8, 1977, the SBA approved the loan to the defendant. The loan agreement specified the following conditions with regard to collateral to secure repayment of the loan:

> First lien under Illinois Uniform Commercial Code on all machinery, equipment (excluding automotive equipment), furniture and fixtures and the proceeds thereof now owned and hereafter acquired at 2234 W. Walnut St., Chicago, Illinois, 2233 W. Fulton St., Chicago, Illinois, and 2945 N. Mozart St., Chicago, Illinois, locations. First lien under Illinois Uniform Commercial Code on all inventory, accounts, general intangibles, and the proceeds thereof, now owned and hereafter acquired, at 2234 W. Walnut St., Chicago, Illinois, 2233 W. Fulton St., Chicago, Illinois, and 2945 N. Mozart St., Chicago, Illinois, locations.

Thereafter, on October 7, 1977, the defendant signed the loan agreement. On that same day, the Board of Directors of the defendant authorized the granting of a security interest to the plaintiff in the inventory and accounts receivable of the defendant. In addition, the defendant executed and delivered to the plaintiff a note in the principal sum of $350,000. To secure repayment of the note the defendant signed a document entitled "Security Agreement" dated October 7, 1977. The security agreement provided in pertinent part:

> In order to secure the payment of the indebtedness as defined in said Note, ... Debtor hereby grants, transfer and conveys to Secured Party a security interest in all machinery, equipment, furniture and fixtures *See Schedule A Attached* now owned and hereafter acquired by Debtor for use in Debtor's business, including without limitation the items described on Schedule "A" attached hereto, together with all replacements thereof and all attachments, accessories and equipment now or hereafter installed therein or affixed thereto (all of the aforesaid hereinafter called the "Goods").

The attached schedule specifically described various types of machinery, equipment, furniture and fixtures. However, the document entitled "Security Agreement" nowhere mentioned inventory and accounts receivable for the loan.

On December 5, 1977 the defendant filed a UCC–1 Financing Statement with the Illinois Secretary of State. The UCC–1 Financing Statement described the property covered as:

> All accounts receivable ... evidencing any obligation to Debtor for payment for

goods sold ... and all inventory of Debtor of every description ...

On or about January 28, 1981, the defendant applied with the plaintiff for a second SBA guaranteed loan in the amount of $233,000. Again, the Board of Directors of the defendant authorized the granting of a security interest to the plaintiff in the inventory and accounts receivable of the defendant. Likewise, the defendant executed and delivered to the plaintiff a secured note in the principal sum of $233,000, which was secured by the aforementioned "Security Agreement". Subsequently, the defendant executed a UCC–1 Financing Statement which described the property covered as "[a]ll accounts receivable ... and all inventory of the Debtor ..."

On January 11, 1983, the defendant filed its voluntary petition for relief under the Bankruptcy Code. Subsequently, a dispute arose as to the extent of the security interest of the plaintiff in the property of the defendant. The plaintiff argues that it has a valid security interest in the machinery, equipment, furniture, fixtures, inventory and accounts receivable of the defendant. Although the document entitled "Security Agreement" omits inventory and accounts receivable of the defendant, the plaintiff contends that it has a valid security interest in these based upon the collective loan documents. However, the defendant counters with a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Bankruptcy Rule 7012. The defendant argues that the document entitled "Security Agreement" fails to describe inventory and accounts receivable as collateral. The defendant, therefore, concludes that the security interest is not enforceable against the defendant with respect to the inventory and accounts receivable pursuant to Section 9–203 of the Illinois Commercial Code. Ill.Rev.Stat., 1983, ch. 26, par. 9–203.

### III.

This court must determine whether the complaint of the plaintiff should be dismissed for failure to state a claim upon which relief can be granted. Pursuant to Rule 12(b)(6), Fed.R.Civ.P. and Bankruptcy Rule 7012, a complaint should be dismissed for failure to state a claim only if the plaintiff would be entitled to no relief on any set of facts which he could prove in support of his claim. *Washington v. Board of Ed., Sch. Dist. 89, Cook County, Ill.*, 498 F.2d 11 (7th Cir.1974).

Section 9–203 of the Illinois Commercial Code states the requisites for the attachment and enforceability of security interests. Section 9–203 provides in pertinent part:

(1) ... a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless

(a) the collateral is in the possession of the secured party pursuant to agreement, *or the debtor has signed a security agreement which contains a description of the collateral ...*;

(b) value has been given; and

(c) the debtor has rights in the collateral. (Emphasis supplied).

Ill.Rev.Stat., 1983, ch. 26, par. 9–203. The parties do not dispute that value has been given or that the defendant has rights in the collateral. Nor do the parties dispute that the plaintiff has a valid subsisting security interest in the machinery, equipment, furniture and fixtures of the defendant pursuant to the document entitled "Security Agreement". Furthermore, plaintiff acknowledges the omission of the inventory and accounts receivable from the document entitled "Security Agreement." Therefore, this court must determine whether the document entitled "Security Agreement" solely defines the extent of the security interest of the plaintiff or whether the various loan documents collectively define the security interest.

This jurisdiction and others have adopted the "Composite Document" theory of security agreements which permits a finding of a security agreement through various loan documents. *See In Re Joseph Wambach*, 343 F.Supp. 73 (N.D.Ill.1972) *aff'd.* 484 F.2d 572 (7th Cir.1973) (notes, financ-

ing statement, personal guarantees and an assignment of a beneficial interest); *In Re Numeric Corp.*, 485 F.2d 1328 (1st Cir. 1973) (financing statement and board of directors' resolution to create a security interest); *In Re Bollinger Corp.*, 614 F.2d 924 (3d Cir.1980) (note and financing statement); *In Re Auto Center Parts*, 6 U.C.C. Rep.Serv. 398 (C.D.Cal.) (note and financing statement); *Evans v. Everett*, 279 N.C. 352, 183 S.E.2d 109 (1971) (financing statement and note); *In Re Carmichael Enterprises, Inc.*, 334 F.Supp. 94 (N.D.Ga.1971) (letter and financing statement).

 These cases, however, are distinguishable from the case at bar. In the aforementioned cases, no singular document qualified as a security agreement. Consequently, the courts examined the collective loan documents and correspondence in determining whether a security agreement existed. The instant case is distinguishable in that a separate document entitled "Security Agreement" qualifies as a security agreement under the Illinois Commercial Code. Therefore, the aforementioned cases did not directly address the issue of whether a security interest is defined by the narrower description in a document entitled "Security Agreement" or whether a security interest is defined by the broader description found in the collective loan documents. Some courts, including the Illinois Appellate Court, have addressed this precise issue.[1] The Illinois Appellate Court in *Allis-Chalmers Corp. v. Staggs*, held that a security interest is defined by the narrower description contained in a security agreement rather than by the broader description found in a financing statement. In reaching this holding, the court noted that the security agreement itself creates or provides for a security interest. Ill.Rev.Stat.1983, ch. 26, par. 9–105(1)(*l*). Moreover, a financing statement serves merely to place third parties on notice that a party may have a perfected security interest in the described collateral.

*Mitchell*, 458 F.2d at 704. In addition, Section 9–201 of the Illinois Commercial Code provides that a security agreement "is effective according to its terms." Ill. Rev.Stat.1983, ch. 26, par. 9–201. Further, Section 9–203(1)(a) directs that a security interest is ineffective unless the debtor has signed a security agreement which contains a description of the collateral. Ill.Rev.Stat. 1983, ch. 26, par. 9–203(1)(a). Therefore, a security interest cannot exist in the absence of a security agreement.

 Significantly, the comment to Section 9–110 of the Illinois Commercial Code warns that:

> the practitioner should also bear in mind that a difference in the descriptions between the security agreement and the financing statement can lead to serious problems, if the difference involves omission of items of collateral from either document. *The security agreement and the financing statement are double screens through which the secured parties' rights to collateral are viewed, and his rights are measured by the narrower of the two.*

Ill.Ann.Stat., ch. 26, par. 9–110, Illinois Code Comment at 85 (Smith Hurd, 1974) (citations omitted; emphasis supplied). In the same manner, where a security agreement clearly grants a specific, unambiguous security interest, parol evidence cannot enlarge the security interest beyond that stated in the security agreement. *See Matter of California Pump & Mfg. Co., Inc.*, 588 F.2d 717, 719–20 (9th Cir.1978); *Mitchell*, 458 F.2d at 704; *In Re Mann*, 318 F.Supp. at 36; *In Re Swearingen*, 27 B.R. 379, 383 (Bankr.D.Kan.1983); *See also In Re Little Brick Shirthouse, Inc.*, 347 F.Supp. 827, 829 (N.D.Ill.1972). One purpose for the formal requirements of Section 9–203 is to minimize:

> the possibility of future dispute[s] as to the terms of a security agreement and as

---

1. *Allis-Chalmers Corp. v. Staggs*, 117 Ill.App.3d 428, 72 Ill.Dec. 840, 453 N.E.2d 145 (5th Dist. 1983); *Mitchell v. Shepherd Mall State Bank*, 458 F.2d 700 (10th Cir.1972); *In Re Mann*, 318 F.Supp. 32 (W.D.Va.1970); *In Re Burkhard*, 6 U.C.C.Rep.Serv. 244 (W.D.Va.1970); *Jones & Laughlin Supply v. Dugan Production Corp.*, 85 N.M. 51, 508 P.2d 1348 (N.M.App.1973).

to what property stands as collateral for the obligation secured.

Ill.Rev.Stat., ch. 26, par. 9–203. Official Code Comment. Moreover, the comment to Section 9–101 indicates that the aim of Article 9

> is to provide a simple and unified structure within which the immense variety of present day secured financing transactions can go forward with less cost and greater certainty.

Ill.Rev.Stat., ch. 26, par. 9–101, Official Code Comment.

■ This court finds that the document entitled "Security Agreement" unambiguously grants to the plaintiff a security interest in the machinery, equipment, furniture and fixtures of the defendant. To allow parol evidence to alter the unambiguous language of the document entitled "Security Agreement" would undermine the purpose of Section 9–203 and detract from the Article 9 aim of commercial certainty. In light of the dictates of *Allis-Chalmers v. Staggs*, the overall aim of Article 9, the comment to Section 9–203 of the Illinois Commercial Code and the parol evidence rule, the document entitled "Security Agreement" solely defines the extent of the security interest of the plaintiff. Thus, the plaintiff holds a valid subsisting security interest in the machinery, equipment, furniture and fixtures, but not in the inventory and accounts receivable. This court notes that while the collateral loan documents reflect a broader description of collateral, this result:

> is commanded not by fireside equities but by the necessary technicalities inherent in any law governing commercial transactions ....

> [T]o the extent that the legal significance of documents may be varied and enlarged by other documents evidencing an understanding of the immediate parties to a transaction, we suspect that the law of commercial transactions will not achieve [its] stated purpose. *Safe Deposit Bank & Trust Co. v. Berman*, 393 F.2d 401, 402, 404 (1st Cir.1968).

Since the security interest of the plaintiff is solely defined by the document entitled "Security Agreement" which omits inventory and accounts receivable, the plaintiff would be entitled to no relief under any set of facts which it could prove in support of its claim. Accordingly, the motion of the defendant to dismiss the complaint of the plaintiff pursuant to Bankruptcy Rule 7012 is granted. Counsel for the defendant is to prepare a draft order in accordance with this opinion within five (5) days.