In re H & I PIPE AND SUPPLY
COMPANY, INC., Debtor,

H & I PIPE AND SUPPLY
COMPANY, INC., Plaintiff,

v.

FIRST NATIONAL BANK OF
CROSSVILLE, TENNESSEE,
Defendant.

Bankruptcy No. 282–03906.
Adv. No. 384–0154.

United States Bankruptcy Court,
M.D. Tennessee.

Dec. 13, 1984.

Gregory L. Cashion, Manier, White, Herod, Hollabough & Smith, P.C., Nashville, Tenn., for John McLemore, Trustee.

Joseph Looney, Looney, Looney & Conner, Crossville, Tenn., for First Nat. Bank.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

The issue is whether the defendant's security interest is limited to the equipment and machinery specified in the security agreement or whether it extends to inventory and accounts receivable only identified in the financing statement and other documents. This court holds that where there is an unambiguous security agreement that does not reference or incorporate the financing statement or other documents, the security interest is limited to the collateral specified in that security agreement.

The following constitute findings of fact and conclusions of law as required by Bankruptcy Rule 7052.

The facts and exhibits in this case have been stipulated and the issue submitted on cross-motions for summary judgment. It appears from the stipulations and exhibits that on a date sometime prior to July 7, 1980, H & I Pipe and Supply Company, Inc. ("the debtor") applied to the First National Bank of Crossville, Tennessee ("bank") for a $500,000 loan. The debtor's president, Hilary H. Igleheart by application dated January 17, 1980 applied for a loan in the same amount on behalf of the debtor to the Small Business Administration ("SBA") through the SBA office in Lubbock, Texas. The debtor is indicated on the face of the SBA loan application as having a business address in Crossville, Tennessee. On July 7, 1980, the SBA issued and the debtor executed an "Authorization and Loan Agreement" indicating that the SBA agreed to guarantee 90% of a $500,000 loan by the First National Bank of Crossville to the debtor. This Authorization and Loan Agreement identified the collateral to include a first lien security interest in "all accounts receivable and inventory" of the debtor.

The $500,000 loan and the SBA guaranty were closed on September 2, 1980. At that

time, the debtor executed a promissory note to the bank in the amount of $500,000. On that same day, the debtor executed a document labeled "Security Agreement" in favor of the bank. This security agreement is a two-page printed form designated as "SBA Form 1059." The blank spaces on this form for the pertinent information about the borrower (name, address, amount of loan, etc.) were typed in and the form signed by the president of the debtor. In the middle of the front page of this form is a paragraph numbered "2" which begins:

> The collateral in which this security interest is granted is all of the debtor's property described below in reference to which an "x" or check mark has been placed in the box applicable thereto ... If two such boxes are so marked, the security interest so designated secures the purchase money from the loan used by the debtor to acquire title to the collateral.

Following this written paragraph, large rectangular boxes are arranged vertically down the middle of the form and to the right of the boxes in paragraphs lettered "a" through "e" are verbal descriptions of different kinds of collateral. The two boxes beside paragraph "a" bearing the collateral description for "all equipment and machinery ... furniture and fixtures ..." contain typed "x" marks. The boxes beside paragraph "c" describing "inventory" and the boxes beside paragraph "d" designating "accounts receivable" are blank. The stipulations submitted by the parties shed no light on why none of the boxes other than the boxes designating "equipment and machinery" are marked on the front page of this security agreement.

Also at the time of the loan closing, a financing statement was executed by the debtor and the bank. Unlike the security agreement, the financing statement describes the collateral as inventory and accounts receivable. This financing statement was recorded with the Cumberland County, Tennessee Registrar of Deeds on October 13, 1980 and was recorded with the Tennessee Secretary of State on October 17, 1980. Other financing statements were recorded in January of 1982 identifying the collateral as equipment and machinery.

The debtor filed this Chapter 11 petition on November 11, 1982. A trustee was appointed and the trustee conducted a sale of the debtor's inventory on September 17, 1983. No equipment or machinery was sold. The trustee concedes that the bank has a perfected security interest in equipment and machinery of the debtor, but contends that the bank is not entitled to the proceeds of the trustee's sale because its security interest does not include inventory.

Cases considering the extent of a security interest where there is a conflict in the collateral descriptions in the loan documents have generally held that where there is a security agreement complete on its face, the courts will not refer to other documents to expand the scope of the security interest unless the security agreement itself refers to those other documents. *See Mitchell v. Shepherd Mall State Bank,* 458 F.2d 700 (10th Cir.1972); *Allis-Chalmers Corp. v. Staggs,* 37 U.C.C. REP. 262, 117 Ill.App.3d 428, 72 Ill.Dec. 840, 453 N.E.2d 145 (1983); *Forest Park National Bank v. Martin Grinding & Machine Works, Inc.,* 42 B.R. 888 (Bankr.N.D. Ill.1984); *In re Fagan,* 26 U.C.C.REP. 1004 (Bankr.S.D.N.Y.1977); *In re Swearingen,* 35 U.C.C.REP. 962, 27 B.R. 379 (Bankr. Kan.1983).

In *Mitchell,* the Tenth Circuit limited the security interest to equipment explicitly enumerated in the security agreement even though the financing statement and other papers appeared to expand the collateral covered to that claimed by the secured party. The court stated that these documents could not "have the effect of enlarging the security agreement so as to create a security interest in collateral not described therein." *Mitchell* at 704.

In *Swearingen* the security agreement failed to list a mobile home as collateral

although the certificate of title (for our purposes, the equivalent of a financing statement) did note the lien on the home. The court refused to consider either parol evidence or the certificate of title to include the mobile home as collateral. The court noted that the parties' intent was immaterial and that the secured party should simply have been more thorough in filling out the security agreement.

Under Tennessee law, it is the security agreement itself that creates the security interest and is the basic contract between the parties. TENN.CODE ANN. § 47–9–105(1)(h). A financing statement is intended purely for notice and does not expand the collateral covered by the security agreement. In the *Allis-Chalmers* case, the court noted that most jurisdictions have held that "when a financing statement describes a greater quantity of property than that described in the corresponding security agreement, the security interest is defined by the narrower description contained in the security agreement." 37 U.C.C. at 265, 117 Ill.App.3d at 432, 72 Ill.Dec. at 843, 453 N.E.2d at 148.

The bank argues that a "separate formal document entitled Security Agreement is not required to create a security interest and that the court should and must look to other writings, regardless of label, that adequately describe the collateral, are signed by the debtor and establish the fact that a security interest was intended and agreed upon." Defendant's brief at p. 4. The bank cites several cases which hold that loan applications, promissory notes, financing statements and other documents can be read together to create security agreements. *See In re Numeric Corp.*, 485 F.2d 1328 (1st Cir.1973); *In re Bollinger Corp.*, 614 F.2d 924 (3d Cir.1980); *Komas v. Small Business Administration*, 22 U.C.C.REP. 550, 71 Cal.App.3d 809, 139 Cal.Rptr. 669 (1977). The bank invites this court to consider the SBA Authorization and Loan Agreement and the financing statements together to create a security agreement in the inventory and accounts receivable.

The bank's argument fails because judicial crafting of a security agreement is not appropriate where the parties have bargained-for and executed a valid and complete security agreement. In all of the cases cited by the bank, there was no separate document serving as a security agreement and therefore the courts had to consider various documents to determine the extent of the agreement among the parties. We have no disagreement with the rationale of these cases, but we consider them to be inapposite to the present situation. That the parties had a security agreement is not questioned. There is no need to look to other documents where the security agreement is facially complete and does not refer to other documents.[1] *See In re Marta Cooperative, Inc.*, 12 U.C.C.REP. 955, 958, 74 Misc.2d 612, 344 N.Y.S.2d 676 (N.Y. Co.Ct.1973). This result favors certainty in commercial transactions and appropriately places upon the secured party the risk not to make mistakes in its preparation of the security agreement. *See Mitchell* at 704. ("The Code's requirements for the creation of security interests are simple and clearly set forth. Where forms to facilitate compliance with these requirements have been provided, the secured party ought to be able to fill in the blanks so as to avoid ambiguity with regard to the security interest granted.")

In a recent decision involving virtually identical forms, facts and arguments, Judge Hertz reached the same conclusion in *Forest Park National Bank v. Martin Grinding & Machine Works, Inc.*, 42 B.R. 888 (Bankr.N.D.Ill.1984). There the court was also faced with a document entitled "Security Agreement" which failed to list inventory and accounts receivable as collateral. The secured party argued that the

---

1. The bank offered no explanation why the security agreement did not refer to inventory and accounts receivable and there is no suggestion of fraud.

**952**

financing statement, loan agreement, and parol evidence should be combined to create a security interest including inventory and accounts receivable. The court recognized the *Numeric* and *Bollinger* theory of finding a security agreement through the financing statement and various loan papers where no formal security agreement exists. However, it held that the unambiguous "Security Agreement" defined the extent of the security interest and the collateral covered could not be expanded by looking to other documents or evidence. We concur with Judge Hertz.

In conclusion, we find that the bank failed to perfect a security interest in the debtor's inventory and accounts receivable.

An appropriate order will be entered.