**In re Nick H. MAHLERES, Debtor.**

**Bankruptcy No. 84 B 06411 M.**

United States Bankruptcy Court,
D. Colorado.

Sept. 18, 1985.

Claire Holmes, Denver, Colo., for debtor.

Elizabeth Greenberg, Denver, Colo., for First Nat. Bank in Grand Junction.

## FINDINGS OF FACT, CONCLUSIONS AND ORDER ON DEBTOR'S MOTION FOR AUTHORIZATION TO USE ALLEGED CASH COLLATERAL

JOHN F. McGRATH, Bankruptcy Judge.

On July 8, 1985, the Debtor filed a Petition for authorization to use alleged cash collateral. The Debtor wishes to use a check in the amount of $17,180.56, representing a wool incentive payment for the 1984 wool crop. First National Bank in Grand Junction (Bank) asserts an interest in the payment by virtue of its security interest in the Debtor's sheep. The Debtor asserts that the Bank does not have a perfected security interest in the government payment, as it failed to acquire or perfect a security interest in wool. The funds are presently held by the Debtor in an escrow account. The Bank filed an objection to the use of the monies, since it claims a security interest in the proceeds of the crop.

On or about February 2, 1983, the Debtor signed a Note in favor of the First National Bank in Grand Junction in the amount of $1,450,000. The Note shows that it is secured by a Security Agreement in sheep, machinery, equipment, vehicles and deeds of trust on the Debtor's property. A Security Agreement was signed on the same date, covering certain personal property, including 2,500 ewes. Financing Statements were filed both with the County Clerk and Recorder of Rio Grande County, the location of the sheep, and with the Secretary of State, on or about February 16, 1983. A box on each Financing Statement indicated that products of the original collateral was also claimed by the Bank. No such statement regarding products was contained in the Security Agreement.

Shortly before this hearing, the Debtor received a check in the amount of $17,180.56, representing a wool incentive payment from an agency of the United States, pursuant to the National Wool Act of 1954 (7 U.S.C. § 1781). Ranchers are paid by the government to cultivate sheep and to sell the wool for the best possible price. The wool incentive program payments are keyed to the price the rancher receives for wool actually sold.

The Debtor makes three arguments that the Bank is not entitled to the payment of this money and, indeed, that the Bank does not have a security interest in the payment. Therefore, the Debtor argues this check does not constitute cash collateral and can be used by the Debtor without interference by the Bank.

■ The Debtor's first argument is that, since the word "proceeds" is not contained in the Security Agreement, if this payment is to be considered "proceeds", the Bank does not have a security interest in it. However, the Uniform Commercial Code (U.C.C.), 4–9–203 C.R.S. (1973) provides that: "Unless otherwise agreed, a security agreement gives the secured party the rights to proceeds provided by section 4–9–306." It is clear, therefore, that the secured party does have the rights to proceeds, whether or not that right is provided for in the Security Agreement.

■ Next, the Debtor claims that the incentive payments are not proceeds, but are general intangibles. Proceeds are defined at 4–9–306(1) C.R.S. (1973) as including whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds. Money, checks, deposit accounts, and the like are "cash proceeds". All other proceeds are "noncash proceeds". The wool incentive payments came as a result of the Debtor's sale of the wool, and therefore, are proceeds of the wool. Without the sale of the wool, there would be nothing at all paid to the Debtor. Also, these proceeds are identifiable cash proceeds, since they are represented by a check.

■ The final objection by the Debtor is that one cannot have a lien on the wool

payments, since the Code of Federal Regulations section 1472.1548 prohibits a lien on wool from extending to the wool incentive payments. However, section 1472.1550 allows payment to a third party if there is a proper assignment of the payment. The Court holds that the regulation at section 1472.1548 merely expresses an intent that the government not be held liable for payment to the producer of the wool, notwithstanding the existence of a lien held by another entity. This is a common government regulation in this field. Obviously, the government recognizes proper assignments presented to it, but does not wish to be held liable for payments to lienors and be responsible for checking the records to determine the existence of liens. Therefore, if a lien exists against the payment, it is not rendered invalid by section 1472.-1548.

The principal question seems to be whether or not a security interest in ewes and rams, but not in their products, would cover wool. The recorded Financing Statements do cover products but the Security Agreement does not. Can the financing statement be broader than the security agreement, and therefore, cover products?

Here we have totally integrated documents. No reference to other writings are required.

The courts almost uniformly hold that the financing statement cannot extend the security agreement and that the security agreement controls when both a financing statement and security agreement are the only documents in existence. In the matter of *H & I Pipe and Supply Co., Inc.*, 44 B.R. 949 (Bankr.M.D.Tenn.1984) at 949, the court unequivocally states: "... This court holds that where there is an unambiguous security agreement that does not reference or incorporate the financing statement or other documents, the security interest is limited to the collateral specified in that security agreement."

The court went on to hold that the security interest of the bank in that case was, therefore, limited to the equipment and machinery specified in the security agreement

and not to inventory and accounts receivable only identified in the financing statement and other documents. The court, at 950 went on to state further:

Cases considering the extent of a security interest where there is a conflict in the collateral descriptions in the loan documents have generally held that where there is a security agreement complete on its face, the courts will not refer to other documents to expand the scope of the security interest unless the security agreement itself refers to those other documents. (Citations omitted.)

This reasoning has been clearly adopted by the Tenth Circuit. In *Mitchell v. Shepherd Mall State Bank*, 458 F.2d 700 (10th Cir.1972), the financing statement reflected a security interest in certain collateral not described in the security agreement itself. The court held that the purpose of a financing statement is merely to place third parties on notice of a claimed security interest. Absent language constituting a grant of a security interest, the financing statement cannot serve as a security agreement so as to create a security interest in collateral not described in it.

In this case, the security agreement does not expressly cover wool, nor does the financing statement. While the financing statement does include products of the collateral, sheep, the security agreement does not. Therefore, if wool is a "product" rather than a "proceed" of the sheep, it is not part of the Bank's collateral. And, if the wool is not collateral, the wool incentive payment, proceeds of the wool, is also not collateral.

This court has located no case directly on point in determining whether wool is a product or a proceed. The Bankruptcy Court for the District of Minnesota in 1984 held that milk was a product and not proceeds. *In re Quaal*, 40 B.R. 619 (Bankr.Minn.1984). By analogy, wool is a product of sheep as much as milk is a product of cows.

The court, therefore, finds and concludes that since the Security Agreement did not

[redacted]

[redacted]

secure products from the sheep (wool or payments for wool) the Financing Statement cannot extend the security, and therefore, the check in the amount of $17,180.56, representing a wool incentive payment, is not secured to the First National Bank in Grand Junction.

WHEREFORE, IT IS ORDERED that the Petition by the Debtor to use the $17,180.56 Wool Incentive Payment without any claim on those funds in favor of the First National Bank in Grand Junction be and the same is hereby granted.