### In re PATSANTARAS LAND AND LIVESTOCK CO., Debtor.

**Bankruptcy No. 84 B 5386 G.**

United States Bankruptcy Court, D. Colorado.

March 17, 1986.

Claire E. Holmes, Roath & Brega, P.C., Denver, Colo., for debtor.

Glenn W. Merrick, Davis, Graham & Stubbs, Denver, Colo. Nat. Bank-Orchard Mesa.

### ORDER

ROLAND J. BRUMBAUGH, Bankruptcy Judge.

THIS MATTER comes before the Court on the motion by Colorado National Bank-Orchard Mesa for an accounting and surrender of cash collateral. A hearing was held on this motion on March 12, 1986.

The parties agree that CNB's security agreement covers, among other things, the debtor's livestock and products from the livestock. Miss Holmes, the debtor's attorney, forwarded to Mr. Merrick, CNB's attorney, a detailed letter listing the cash collateral which the debtor has acquired since the commencement of the case, and Mr. Merrick indicated that this provided CNB with sufficient accounting. Mr. Merrick also stated that Miss Holmes had agreed to surrender of the collateral, but had been unable to obtain the funds from her client.

The only issue before the Court is the matter of approximately $22,000.00 in wool incentive payments received by the debtor. Since 1954, the Federal government has been making such payments, pursuant to the National Wool Act of 1954, 7 U.S.C. § 1781 et seq., in an effort to motivate ranchers to grow sheep and sell the wool at the best price. The payments relate to the price at which the wool is actually sold. CNB asserts that such payments are proceeds from products of the sheep, and are thus covered by the security agreement. The debtor contends that the payments should be found to fall outside the security agreement, as 44 C.F.R. 1472.1548 provides that a lien on wool will not extend to a wool incentive payment.

This Court has previously found that Payment-In-Kind (PIK) payments, payments of grain made by the government to

compensate farmers and ranchers for non-production of their own grain crops, constituted rents or profits of the land, and were therefore covered by a mortgage on "rents, issues, and profits" of debtor's land. *In re Preisser,* 33 B.R. 65, 66–67 (Bankr.Colo. 1983); *accord, In re Lee,* 35 B.R. 663, 667 (Bankr.N.D.Ohio 1983). More recently, Judge McGrath has ruled that wool incentive payments could not fall under a security agreement which failed to specify that it secured products of sheep, because wool is a product of sheep, and a wool incentive payments are proceeds of that product. *In re Mahleres,* 53 B.R. 86, 87 (Bankr.Colo. 1985). In the instant case, however, CNB's security agreements do indeed specify coverage of the products of sheep. Therefore, following the reasoning of *Priesser, Lee,* and *Mahleres,* the wool incentive payments must be considered part of cash collateral, unless such an interpretation is prohibited by the Code of Federal Regulations.

44 C.F.R. § 1472.1548 states: "[i]f a producer grants a lien on sheep, lambs, or wool, such lien shall not be deemed to extend to payments made to the producer pursuant to this subpart." However, 44 C.F.R. § 1472.1150 goes on to provide that "[a]n assignment of a payment due or to become due under this subpart on shorn wool or on unshorn lambs may be given to a financing agency or wool marketing agency ..."

Judge McGrath held § 1472.1548 merely showed the intent that the government be free from liability to pay the wool producer notwithstanding a lien to a third party. *Mahleres, supra,* at 88. He recognized that this sort of regulation is common in the field, and does not invalidate a lien against the payment, pointing out that a proper assignment of the payment will be recognized under 44 C.F.R. § 1472.1550. *Id.* In the *Priesser* case, a regulation similar to 44 C.F.R. § 1472.1548 was involved, and this Court found that such a regulation promotes the administrative convenience of the agency making the payments, and "cannot have been intended to void liens which are otherwise valid under state and federal bankruptcy laws." *Priesser, su-*

*pra,* at 67. Although PIK payments may be described as a substitute for a crop, and wool incentive payments as a price support, they both may be considered as proceeds which may be covered by a security agreement. In the case at bar, it is clear that such proceeds are covered by existing security agreements.

It is therefore ordered that the debtor shall surrender, within ten (10) days, to CNB all of the cash collateral currently in the debtor's possession, custody, or control in which CNB has an interest, including approximately $22,000.00 in wool incentive payments. Each party will bear its own costs as to this motion.