### In re NIGHTWAY TRANSPORTATION CO., INC., an Illinois Corporation, Debtor.

#### Joel A. SCHECHTER, Trustee, Plaintiff/Counter Defendant,

v.

#### Alfred S. NELSON, Defendant/Counter Plaintiff.

#### Bankruptcy Nos. 86B3151, 86A0920.

United States Bankruptcy Court, N.D. Illinois, E.D.

Feb. 27, 1989.

---

H. Lester Seidner, Seidner and Seidner, Chicago, Ill., for debtor.

Joel Schechter, Grossman, Mitzenmacher & Schechter, Chicago, Ill., Trustee.

Richard J. Witry, McCarthy, Duffy, Neidhart & Snakard, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

DAVID H. COAR, Bankruptcy Judge.

This matter comes to be heard on the Plaintiff's Motion and the Defendant's Cross-motion for Summary Judgment. The Court, having considered the record and pleadings on file, and having considered arguments and memoranda of law presented by the parties in support of their respective positions, and being fully advised in the premises, now enters its ruling:

This is a core proceeding over which the Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(k). The following constitutes the Court's findings of fact and conclusions of law, pursuant to Bankruptcy Rule 7052. For the reasons stated below, the Plaintiff's Motion for Summary Judgment is granted.

### Background

The Debtor, NIGHTWAY TRANSPORTATION CO., INC. [Nightway–Illinois], is an Illinois corporation formerly known as RICHARD V. QUINN, INC. [Quinn]. The Defendant, ALFRED S. NELSON [Nelson], was the owner of a now dissolved Indiana corporation known as NIGHTWAY TRANSPORTATION CO., INC. [Nightway–Indiana].

On October 15, 1984, Nightway–Indiana and Quinn entered into an "Asset Purchase Agreement." Pursuant to the "agreement," Quinn was to purchase the "goodwill, operating rights, rolling stock, supplies and goods on hand, office furnishings, fixtures and equipment, of Nightway–Indiana." Accounts receivable were not included in the "agreement." Quinn was to pay Nightway–Indiana $45,000 by certified check at the closing and to execute a promissory note in favor of Nightway–Indiana, for the balance of $250,000.

On October 19, 1984, Quinn executed a promissory note payable to Nightway–Indiana for the sum of $250,000. As security for the performance of the note, Quinn and Nightway–Indiana entered into a Security Agreement for payment of the note, whereby Quinn pledged the following as collateral:

a) all operating rights;

b) all rolling stock;

c) all supplies and goods;

d) office furnishings fixtures and equipment;

e) *all accounts receivable from any source whatsoever;* and

f) any replacement items for any of the aforementioned items, or any proceeds or insurance payments emanating from or related to any of the above; (emphasis added)

It is undisputed that at the time of both the security agreement and the financing statement, Nightway–Indiana had no accounts receivable.

On November 8, 1984, Nightway–Indiana's security interest was perfected when Quinn filed a U.C.C. financing state-

ment with the Illinois Secretary of State. The financing statement provided that Nelson had a security interest in the following:

all rolling stock, supplies and goods on hand, office furnishings, fixtures and equipment. All accounts receivable from any source whatsoever, all replacement items for the above, and all after-acquired similar items whatsoever.

Subsequently, Nightway–Indiana assigned the promissory note and its interest in the security agreement to Alfred S. Nelson. Nightway–Indiana was later voluntarily dissolved. Thereafter, Quinn amended its Articles of Incorporation to change its name to Nightway Transportation Co, Inc. (Nightway–Illinois).

On February 29, 1986, Nighway–Illinois filed a voluntary petition under Chapter 7 of Title 11 of the United States Bankruptcy Code. Sometime before or immediately after Nightway–Illinois' Chapter 7 filing, Nelson entered the premises and took possession of, inter-alia, books and records including the accounts receivable ledger and payments made to the debtor on outstanding accounts.

On August 12, 1986, the trustee filed a complaint against Nelson seeking to recover the proceeds of the accounts receivable totaling $27,688.34, which Nelson had previously taken. Pursuant to an agreement entered into by the parties, Nelson turned over said sum, to the trustee.

On September 5, 1986, Nelson answered the complaint and filed a counterclaim asserting a perfected security interest in the accounts receivable and any proceeds thereof.

On November 14, 1986, the trustee answered Nelson's counterclaim alleging that the counterclaim failed to state a cause of action and that Nelson did not have a properly perfected security interest in the accounts receivable because the security agreement failed to include "after-acquired" accounts receivable. The trustee also filed a motion for summary judgment, alleging that since "after-acquired" accounts receivable were not included in the security agreement, Nelson has no rights

in such collateral or proceeds thereof, as a matter of law.

On December 8, 1986, Nelson filed his response to the trustee's motion for summary judgment. Nelson argued that the security agreement granted him an interest in "after-acquired" accounts receivable.

On January 5, 1987, Nelson filed a cross-motion for summary judgment alleging a perfected security interest in the accounts receivable and any proceeds thereof.

The Plaintiff's motion and the Defendant's cross-motion for summary judgment are now before the Court.

### Standard for Summary Judgment

Summary judgment is appropriate where the court is satisfied that "there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of establishing the non-existence of a genuine issue is on the party moving for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Hossman v. Spradlin*, 812 F.2d 1019, 1020 (7th Cir.1987). All doubts regarding issues of material fact must be viewed in the light most favorable to the non-moving party. *Poller v. Columbia Broadcasting System Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1961); *Moore v. Market Place Restaurant, Inc.*, 754 F.2d 1336, 1339 (7th Cir.1985). Moreover, all inferences must be construed in favor of the movant's opponent. *United States v. Diebold Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Big O Tire Dealers Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir. 1984).

The Court finds that the pleadings and the record in this case present no genuine issue as to any material fact. Therefore, Summary Judgment is appropriate.

### Discussion

The issue before this Court is whether the security agreement providing Nelson with a security interest in "all accounts

receivable"[1] is sufficient as a matter of law to give the defendant a security interest in the Debtor's "after-acquired" accounts receivable.

The Bankruptcy Code defines a "security interest" as a lien created by agreement." 11 U.S.C. § 101(45). Whether an agreement creates a lien, however, depends upon state law. *See, Butner v. United States*, 440 U.S. 48, 54–57, 99 S.Ct. 914, 917–19, 59 L.Ed.2d 136 (1979). Accordingly, Illinois law governs the scope of Nelson's security interest.

Article 9 of the Illinois Uniform Commercial Code [Commercial Code], provides that a security interest becomes effective between the debtor and the secured lender when it attaches. A security interest attaches when:

(a) the collateral is in the possession of the secured party pursuant to the agreement, or the debtor has signed a security agreement which contains a description of the collateral.

(b) value has been given; and

(c) the debtor has rights in the collateral.

Ill.Rev.Stat., ch. 26, para. 9–203(1) (1986).

In order to perfect a security interest in accounts receivable, a proper financing statement must be filed with the Secretary of State. See, Ill.Rev.Stat., ch. 26, paras. 9–103(3), 9–401 (1986). The function of the financing statement is to place third parties on notice that the secured party who filed

it, may have a perfected security in the collateral described. *Allis–Chalmers Corp. v. Staggs*, 117 Ill.App.3d 428, 72 Ill. Dec. 840, 453 N.E.2d 145 (1983). Under Illinois law, a security interest attaches only to property described in the security agreement. *Matter of Martin Grinding & Machines Works, Inc.*, 793 F.2d 592, 595 (7th Cir.1986). Thus the Court agrees with the trustee that the security agreement and not the financing statement governs the extent of Nelson's security interest.

In the present case it is uncontested that Nelson had a security interest in the collateral mentioned in the security agreement, including such accounts receivable as existed at the time. The crux of the dispute rather, is whether the security agreement may also be read to grant Nelson a security interest in after-acquired accounts receivable.[2] A number of courts and commentators have addressed the question of whether a security agreement must expressly grant an interest in accounts receivable and inventory, acquired after the date of the agreement. Not surprisingly, the authorities are split.[3] Some courts have found that express language is required,[4] while others have held that it is not.[5]

The determination whether a creditor's security interest encompasses property acquired after the date of the security agreement, is governed by the intent of the

1. "Any description of collateral is sufficient, whether or not it is specific, if it reasonably identifies what is described." Ill.Rev.Stat., ch. 26, para. 9–110 (1986).

2. The Commercial Code allows a security agreement to include by after-acquired collateral. Ill. Rev.Stat., ch. 26, para. 9–204 (1986).

3. *See*, 2 Gilmore, Security Interests, section 35.5 (1965); 8 Anderson, Uniform Commercial Code, section 9–204; J. White & R. Summers, Handbook of the Law of the Uniform Commercial Code 912 (2d. ed. 1980); 2 W.D. Hawkland, A Transactional Guide to the Uniform Commercial Code, ¶ 2.320101 (1964).

4. *See, In re Balcain Equipment Co.*, 80 Bankr. 461, 462 (Bkrtcy.C.D.Ill.1987) ("the UCC contemplates that a security agreement should clearly spell out any claims to after-acquired property"); *In re Taylored Products, Inc.*, 5 UCC Rep.

Serv. 286 (W.D.Mich.1968) (inclusion of after-acquired property clause in security agreement compulsory under UCC section 9–204); *Evans Products Co. v. Jorgensen*, 245 Or. 362, 421 P.2d 978 (1966); *DuBay v. Williams*, 417 F.2d 1277 (9th Cir.1969).

5. *See, Frankel v. Associates Financial Services Co.*, 281 Md. 172, 176, 377 A.2d 1166, 1168 (1977) (the court rejected the argument that a security agreement must specifically contain an "after-acquired" property clause or its equivalent); *In re Nickerson & Nickerson, Inc.*, 329 F.Supp. 93, 96 (D.Neb.1971), aff'd, 452 F.2d 56 (8th Cir.1971) (security interest granted in "all inventory;" Held: after-acquired inventory "automatically covered" by the agreement unless otherwise stated); *In re Fibre Glass Boat Corp.*, 324 F.Supp. 1054 (S.D.Fla.1971) aff'd, 448 F.2d 781 (5th Cir.1971) (court held that a security agreement that covered inventory by its very nature also covered after-acquired inventory).

parties as expressed in the security agreement. *American Employers Insurance Co. v. American Security Bank, N.A.,* 747 F.2d 1493 (D.C.Cir.1984). A security agreement is a contract, which is effective according to its terms between the parties, against purchasers of the collateral and against creditors. *In re Provident Hospital,* 79 B.R. 374, 377 (Bkrtcy.N.D.Ill.1987). Where a security agreement is unambiguous, parol evidence may not be used to expand a security interest beyond that granted in the security agreement. *Matter of Martin Grinding & Machine Works, Inc.,* 793 F.2d 592 (7th Cir.1986). Thus, whether Nelson's security interest includes the Debtor's after-acquired accounts receivable turns on whether that was the intent of the parties, as manifested by the security agreement.

The trustee argues that since the security agreement does not mention "after-acquired" accounts receivable and since at the time of the agreement, there were no accounts receivable in existence, the parties did not intend Nelson to have an interest in after-acquired accounts.

The trustee cites *In re Middle Atlantic Stud Welding Co.,* 503 F.2d 1133 (3rd Cir. 1974) in support of his position. The issue therein was whether the security agreement's reference to "all receivables" was sufficient to give the creditor an interest in after-acquired accounts. The court held that the creditor did not have a security interest in the debtor's after-acquired accounts, absent language to that effect. The court considered it neither unreasonable nor onerous to require the parties to make clear the intended collateral. The court reasoned that this requirement would simplify the interpretation of security agreements and provide adequate notice to

third parties of the extent of a perfected security interest in the debtor's property.

Nelson on the other hand, argues that "after-acquired" language is not necessary to grant a security interest in after-acquired accounts receivable. He cites *American Employers Insurance Co. v. American Security Bank, N.A.,* 747 F.2d 1493 (D.C.Cir.1984) as authority for his position.

*American Employers* is illustrative of the majority view. There, the court read a security agreement granting an interest in "all inventory or receivables," to include after-acquired inventory or receivables. The court reasoned that since these types of collateral are constantly turning over, such a description of the collateral suffices to place a prospective creditor on notice that the prior creditor's security interest may extend to such after-acquired property.

This Court finds Nelson's arguments seductive but unpersuasive. Nelson explains that although on the date of the security agreement the Debtor had no accounts receivable, he expected the Debtor to generate accounts receivable which would also serve as collateral. Essentially, Nelson contends that he had a floating lien in the Debtor's receivables [6]. Yet, Nelson has failed to provide this Court with sufficient facts to support such a determination. Nelson notes that the parties intended a long-term relationship. Although this fact is generally relevant in determining whether a floating lien was intended, without more however, it is of no consequence. Similarly, the cases cited by Nelson in his brief as supportive of his position, are distinguishable.[7] In those cases, the courts

---

**6.** A floating lien is a security interest which floats from present collateral to future collateral as present collateral is used up and replaced. *In re Provident,* 79 B.R. 374, 380 fn. 16 (Bkrtcy. N.D.Ill.1987). The Illinois Commercial Code recognizes the validity of a floating lien. *See,* Ill.Rev.Stat., Ch. 26, ¶ 9–204(1), *supra* note 2.

**7.** *In re Fibre Glass Boat Corp.,* 324 F.Supp. 1054 (S.D.Fla.1971), *aff'd,* 448 F.2d 781 (5th Cir.1971) (court noted that inventory changes daily, thus creditor's security interest must extend to after-

acquired inventory); *In re Nickerson & Nickerson, Inc.,* 329 F.Supp. 93 (D.Neb.1971), *aff'd,* 452 F.2d 56 (8th Cir.1971) (court concluded that where a security interest is taken in the inventory of a business, after-acquired inventory is automatically covered by the agreement, unless it specifies to the contrary); *In re Page,* 16 UCC Rep.Serv. 501 (M.D.Fla.1974) (creditor granted a security interest in "all inventory and equipment." Court found that parties intended after-acquired inventory to be covered by the security agreement.)

implicitly found that the debtor intended to give the creditor a floating lien in the collateral. The courts generally noted that the debtor was engaged in the type of business where the collateral, usually inventory or receivables, constantly turned over.[8] *See, In re Page,* 16 UCC Rep.Serv. 501 (M.D.Fla.1974). Therefore, the courts reasoned that the parties intended the creditor's security interest to not only include the inventory and receivables on hand as of the date of the security agreement, but also, after-acquired inventory and receivables, where that collateral is consumed in the debtor's ordinary course of business. *See, In re Fibre Glass Boat Corp.,* 324 F.Supp. 1054, 1056 (S.D.Fla.1971), *aff'd,* 448 F.2d 781 (5th Cir.1971) ("surely the creditor would not enter into a financing arrangement secured by collateral fixed on a particular date when the collateral by its nature would be constantly changing").

In this case however, Nelson has not demonstrated to the Court that given the nature of the Debtor's business, a floating lien in the Debtor's accounts receivable was contemplated by the parties. In the absence of such evidence, this Court cannot find that Nelson's security interest included the Debtor's after-acquired accounts receivable. Accordingly, Nelson's Cross-motion For Summary Judgment is denied.

Because the Court is unable to read the security agreement as granting Nelson a security interest in the Debtor's after-acquired accounts receivable, the Court finds that Nelson's interest is limited to accounts in existence on the date of the agreement. The Debtor did not have any accounts on the date of the security agreement. Accordingly, the Court finds that Nelson has no interest in the Debtor's accounts receivable that existed on the date of the petition. Therefore, the Court finds that the Trustee is entitled to summary judgment as a matter of law.

*Conclusion*

IT IS HEREBY ORDERED that plaintiff's Motion for Summary Judgment is granted and the defendant's Cross–Motion for Summary Judgment is denied.

---

**8.** The constant changes and turnover of inventory and receivables in the operation of a mercantile business may be likened to the flow of a stream or river. Although the specific water in the stream at any particular time and place changes from hour to hour, the stream remains the same. Smith and Roberson, *Business Law, The Uniform Commercial Code* (4th ed. 1977) at 908.